232 N.J. Super. 449 (1989)
557 A.2d 683
COUNCIL OF THE CITY OF NEWARK, A BODY POLITIC, PLAINTIFF-APPELLANT,
v.
SHARPE JAMES, MAYOR OF THE CITY OF NEWARK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1989.
Decided April 24, 1989.
*450 Before Judges BRODY, ASHBEY and SKILLMAN.
Mark L. Mucci, argued the cause for appellant (Stryker, Tams & Dill, attorneys; Richard B. McGlynn, of counsel; Mark L. Mucci, on the brief).
Salvatore Perillo argued the cause for respondent (Perillo & Rosenberger, attorneys; Salvatore Perillo, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
The issue in this appeal is whether the Council or the Mayor of the City of Newark has the exclusive statutory authority to choose which parcels of city-owned real property shall be offered for sale at public auction and to determine the conditions to be attached to each sale. After a bench trial, the judge concluded that the Council has standing to bring this action and that the Mayor alone has the authority in question. We affirm the judge's determination respecting the Council's standing, but we read the applicable statutes differently and reverse on the merits.
As to the standing issue, the Mayor, relying on Washington Tp. Zon. Bd. v. Planning Bd., 217 N.J. Super. 215 (App.Div. 1987), certif. den., 108 N.J. 218 (1987), argues that in the absence of express statutory authority, one branch of a municipal government may not sue another branch. In that case a zoning board challenged the authority of the planning board of the same municipality to grant a use variance. The underlying issue was whether a variance from an ordinance provision that prohibited stores from having a floor area of more than 10,000 feet was a use variance, which only the zoning board could grant, or a bulk variance, which the planning board could grant. The court held that it was unseemly *451 for the zoning board to sue a sister agency at the taxpayers' expense over what the court viewed as a debatable jurisdictional quibble. Id. at 223-224.
The Washington holding was based on the following quotation from Bergen County v. Port of N.Y. Authority, et al., 32 N.J. 303, 314-315 (1960) (an action by Bergen County to have declared unconstitutional a statute that permitted the Authority to acquire certain property for an air terminal and then lease it to a private manufacturer):
To permit contests among [governmental bodies] solely to vindicate the right of the public with respect to jurisdictional powers of other public bodies is to invite confusion in government and a diversion of public funds from the purposes for which they are entrusted. The fear is not idle or theoretical. Practical politics being what they are, one can readily foresee lively wrangling among governmental units if each may mount against the other assaults now permissible upon the initiative of the Governor, the Attorney General or a taxpayer or citizen to vindicate the public right.
Bergen County claimed that the Borough of Moonachie, where the property was located, lost ratables by not being able to tax industrial property because it was owned by the Authority. In holding that the County's interest was too remote to give it standing, the Supreme Court implied that the result would have been different had the County alleged "an intrusion upon [its own] property or political powers...." Id. at 315-316.
We explained the limited scope of the Bergen County holding in Tp. of Dover v. Bd. of Adj. of Tp. of Dover, 158 N.J. Super. 401, 409-410 (App.Div. 1978), where we held that a municipal governing body, suing in the name of the municipality, had standing to sue the zoning board of that municipality to challenge its jurisdiction to grant a variance that was so broad that it encroached upon the governing body's legislative authority to zone. We said in Dover,
An arrogation of authority is, however, quite a different matter [from an erroneous exercise of statutory authority] and, in our view, is necessarily and obviously actionable by the body whose authority has been directly infringed upon. [Id. at 409.]
In the present action, the Council seeks to prevent the Mayor from encroaching on its statutory duties and responsibilities. *452 No one but the Council would reasonably be expected to litigate the issue. The Council is advancing its own direct interests by this action and therefore has standing. To the extent that our holding may differ from the holding in Washington, we follow Dover and respectfully disagree with Washington.
Newark is one of 60 of New Jersey's larger municipalities that have adopted the mayor-council form of government, N.J.S.A. 40:69A-31 to 48, under the Optional Municipal Charters Law (the Faulkner Act), N.J.S.A. 40:69A-1 et seq. The Mayor contends that L. 1985, c. 374, § 1, one of the so-called Lynch[1] amendments to the Faulkner Act, shifted from the Council to the Mayor the exclusive authority to choose what city-owned real property shall be offered for sale to the public and determine the conditions to be attached to each sale. The particular amendment is now N.J.S.A. 40:69A-32b and reads as follows:
For the purpose of the construction of all other applicable statutes, unless the explicit terms and context of the statute require a contrary construction, any administrative or executive functions assigned by general law to the governing body shall be exercised by the mayor, and any legislative and investigative functions assigned by general law to the governing body shall be exercised by the council. Those functions shall be exercised pursuant to the procedures set forth in this [mayor-council] plan of government, unless other procedures are required by the specific terms of the general law. [Emphasis added.]
The general law governing the sale of municipal real property to the public is found in the Local Lands and Buildings Law, N.J.S.A. 40A:12-1 et seq. The pertinent provisions are in N.J.S.A. 40A:12-13:
Any ... municipality may sell any real property,... not needed for public use, as set forth in the resolution or ordinance authorizing the sale ... and, except as otherwise provided by law, all such sales shall be made by one of the following methods:
(a) By open public sale at auction to the highest bidder.... In the case of public sales, the governing body may by resolution fix a minimum price or prices, with or without the reservation of the right to reject all bids where the highest bid is not accepted.... Such resolution may provide, without fixing a minimum price, that upon the completion of the bidding, the highest bid may be *453 accepted or all the bids may be rejected. The invitation to bid may also impose restrictions on the use to be made of such real property ... and any conditions of sale as to buildings or structures, or as to the type, size, or other specifications of buildings or structures to be constructed thereon, or as to demolition, repair, or reconstruction of buildings or structures, and the time within which such conditions shall be operative, or any other conditions of sale, in like manner and to the same extent as by any other vendor. [Emphasis added.]
The issue under the Lynch amendment is whether these portions of the Local Lands and Buildings Law assign to the "governing body" the functions of choosing what real property shall be sold at public auction and determining what conditions, if any, shall be attached to each sale in a context that makes it clear that these functions are to be performed either by the Mayor or by the Council. If it is not clear whether the Mayor or Council is to perform these functions, the functions are to be performed by the Mayor if they are administrative or executive and by the Council if they are legislative.
The trial judge ruled that choosing what city-owned real property to sell and attaching conditions to each sale are administrative functions and therefore must be performed by the Mayor and not by the Council. In our view the Local Lands and Buildings Law explicitly assigns to the Council the entire function of selling city-owned real property at public auction. It is therefore unnecessary to decide whether that function or any part of it is administrative or legislative.
The Mayor cannot adopt a resolution or an ordinance. Only the Council can act in that manner. Thus where the general law requires that a function be performed by resolution or ordinance it necessarily assigns that function to the Council, not the Mayor. N.J.S.A. 40A:12-13 provides that a municipality "may sell any real property ... not needed for public use" by "resolution or ordinance." It follows that the statute assigns to the Council, not the Mayor, the function of selling municipally-owned real property.[2]
*454 The Mayor asserts that N.J.S.A. 40A:12-13 limits the Council's authority merely to approving sales, but assigns to the "governing body" generally the functions of choosing which real properties to sell and what conditions, if any, to attach to each sale. He concludes that because the statute does not explicitly assign these functions to the Council, they must be performed by the Mayor because they are administrative. We reject the Mayor's assertion and therefore need not consider whether his conclusion is correct. N.J.S.A. 40A:12-13 does not assign these functions to the "governing body" generally.
By assigning to the Council the function of "authorizing the sale" of real property "by resolution or ordinance," N.J.S.A. 40A:12-13 assigns to the Council the constituent elements of that function, which include choosing the property to sell and determining the conditions of sale. Also, with respect to sales at public auction, N.J.S.A. 40A:12-13(a) expressly provides that "the governing body may by resolution fix a minimum price... with or without the reservation of the right to reject all bids...." (Emphasis added.) That statute further provides that the "invitation to bid" may include other conditions and restrictions. Although not expressly stated in the statute, the source of any conditions of sale in the "invitation to bid" is necessarily the resolution authorizing the sale.
The Mayor points out that Newark employs 70 people to administer the 6,000 or more lots that it owns. One of the many duties of this staff is to recommend which lots should be sold and what conditions to attach to each sale. The trial judge accepted the Mayor's argument that it follows from all this administrative activity that the ultimate choice of which properties to sell and what conditions, if any, to attach to each sale must also be an administrative function. We disagree. It is *455 not inconsistent to engage a large administrative staff to provide information that a legislative body needs to make essentially legislative decisions. In any event it is not necessary to decide whether such decisions are administrative or legislative because it is explicit from "the terms and content" of the general law, N.J.S.A. 40A:12-13, that these functions are assigned to the Council.
Reversed.
NOTES
[1] The legislation was sponsored by Sen. John A. Lynch, Jr.
[2] The Mayor has the authority to veto an ordinance, which the Council may override by a vote of two-thirds of its members. N.J.S.A. 40:69A-41. As noted above, N.J.S.A. 40A:12-13(a) authorizes the Council to sell city-owned real property at public auction by resolution, which the Mayor has no authority to veto. O'Keefe v. Dunn, 89 N.J. Super. 383, 391 (Law Div. 1965), aff'd, 47 N.J. 210 (1966).