873 A.2d 544

MUNICIPAL COUNCIL OF THE CITY OF NEWARK, PLAINTIFF–APPELLANT, v. SHARPE JAMES, MAYOR OF THE CITY OF NEWARK, JOANNE Y. WATSON, CORPORATION COUNSEL OF THE CITY OF NEWARK, AND DANIEL GONZALEZ, DIRECTOR OF FINANCE, DEFENDANTS–RESPONDENTS.

Argued January 31, 2005—Decided May 24, 2005.

*Salvatore Perillo* argued the cause for appellant (*Perskie Nehmad & Perillo,* attorneys).

*Angelo J. Genova* argued the cause for respondents (*Genova, Burns & Vernoia,* attorneys; *Celia S. Bosco,* on the brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

In our representative democracy, clashes of authority between branches of government are the means by which the tensions among them are defined and, ultimately, resolved. This appeal presents one such conflict, pitting the Municipal Council of the City of Newark against its Mayor.

We hold that, under the circumstances presented here, the statutory scheme of the Optional Municipal Charter Law, *N.J.S.A.* 40:69A–1 to –210 (the Faulkner Act), under which the City of Newark is organized, allocates the responsibility for initiating, negotiating, and signing contracts to the mayor of the municipality, while the city council is charged with approving or rejecting the contracts presented to it by the mayor.

## I.

## A.

"The Faulkner Act is an elective statutory scheme that authorizes participating municipalities to choose [from among] four plans of government that are set forth in the Act." *McCann v. Clerk of City of Jersey City*, 167 *N.J.* 311, 324, 771 *A.*2d 1123 (2001). Specifically, "[t]he Faulkner Act was created with the intent to confer upon municipalities the greatest possible power of local self-government consistent with the Constitution of this State...." *Id.* at 328, 771 *A.*2d 1123 (*quoting Casamasino v. City of Jersey City*, 158 *N.J.* 333, 342, 730 *A.*2d 287 (1999)). At its foundation,

the Faulkner Act creates four optional forms of municipal government—the mayor-council plan, *N.J.S.A.* 40:69A–31 to –67; the council-manager plan, *N.J.S.A.* 40:69A–81 to –98; the small municipality plan, *N.J.S.A.* 40:69A–115 to –132; and the mayor-council-administration plan, *N.J.S.A.* 40:69A–149.1 to –149.16. Each Faulkner Act form of government "divides up the 'bundle of rights' [afforded under the Constitution] differently, presumably so as to be the most effective in meeting the needs of a municipality's inhabitants."

[*Id.* at 330, 771 *A.*2d 1123 (citation omitted).]

Pursuant to a referendum adopted in 1953 by the voters of the City of Newark and effective July 1, 1954, the City of Newark's municipal government is organized under the mayor-council plan C form of government set forth in Sections 60.1 through 60.7 of the Faulkner Act. *N.J.S.A.* 40:69A–60.1 to –60.7. The unique characteristics of the Faulkner Act's mayor-council plan bear special note:

> That plan is distinguishable from the other options because it is "quite close to the presidential or gubernatorial form in its concentration of power in the hands of a highly-visible, independently-elected Chief Executive who has substantial power over the administration." The mayor in a Faulkner mayor-council plan is elected by popular vote to a four-year term.....
>
> The mayor's authority under the Faulkner Act's mayor-council plan is, therefore, substantial, and "[i]t is no accident that this plan has been adopted by virtually all of New Jersey's largest municipalities—places in which there is a need for visible, effective leadership to pursue programs with the full support of the administration." .... The office of Mayor in Jersey City, as in other large cities that have adopted the Faulkner Act, is one of the most powerful municipal offices in this State, created pursuant to a law that was designed to provide municipalities with unique authority and flexibility to organize municipal governments according to local preferences.
>
> [*McCann v. Clerk of City of Jersey City, supra,* 167 *N.J.* at 330–31, 771 *A.2d* 1123 (citations omitted).]

Generally, the mayor-council plan under the Faulkner Act provides that "[e]ach municipality ... shall be governed by an elected council, and an elected mayor....", *N.J.S.A.* 40:69A–32(a), and that "unless the explicit terms and context of the statute require a contrary construction, any administrative or executive functions assigned by general law to the governing body shall be exercised by the mayor, and any legislative and investigative functions assigned by general law to the governing body shall be exercised by the council." *N.J.S.A.* 40:69A–32(b).

More specifically, under the mayor-council plan, the Faulkner Act allocates to the mayor "[t]he executive power of the municipality", *N.J.S.A.* 40:69A–39, and in detail assigns to the mayor the duty to:

> a. Enforce the charter and ordinances of the municipality and all general laws applicable thereto;

b. Report annually to the council and to the public on the state of the municipality, and the work of the previous year; he shall also recommend to the council whatever action or programs he deems necessary for the improvement of the municipality and the welfare of its residents. He may from time to time recommend any action or programs he deems necessary or desirable for the municipality to undertake;

c. Supervise, direct and control all departments of the municipal government and shall require each department to make an annual and such other reports on its work as he may deem desirable;

d. Require such reports and examine such accounts, records and operations of any board, commission or other agency of municipal government, as he deems necessary;

e. Prepare and submit to the council for its consideration and adoption an annual operating budget and a capital budget, establish the schedules and procedures to be followed by all municipal departments, offices and agencies in connection therewith, and supervise and administer all phases of the budgetary process;

f. Supervise the care and custody of all municipal property, institutions and agencies, and make recommendations concerning the nature and location of municipal improvements and execute improvements determined by the governing body;

g. Sign all contracts, bonds or other instruments requiring consent of the municipality;

h. Review, analyze and forecast trends of municipal services and finances and programs of all boards, commissions, agencies and other municipal bodies, and report and recommend thereon to the council;

i. Supervise the development, installation and maintenance of centralized budgeting, personnel and purchasing procedures as may be authorized by ordinance;

j. Negotiate contracts for the municipality, subject to council approval;

k. Assure that all terms and conditions imposed in favor of the municipality or its inhabitants in any statute, franchise or other contract are faithfully kept and performed;

l. Serve as an ex officio, nonvoting member of all appointive bodies in municipal government of which he is not an official voting member.

[*N.J.S.A.* 40:69A–40.]

In addition, the mayor specifically is charged with either approving or rejecting any ordinances adopted by the municipal council, *N.J.S.A.* 40:69A–41(a), casting the deciding vote in the case of a tie on filling a vacancy on the council, *N.J.S.A.* 40:69A–41(b), determining, subject to limits, the hiring, firing, salary, wages and other compensation of municipal administrative employees, *N.J.S.A.* 40:69A–43 and –43a, and the preparation of the municipal budget for submission to the council. *N.J.S.A.* 40:69A–45 and –46.

On the other hand, the council under a Faulkner Act mayor-council plan has its own set of statutorily enumerated duties and limitations. Unlike the mayor, the council may only act "by ordinance, except for the exercise of those powers that, under this plan of government or general law, do not require action by the mayor as a condition of approval for the exercise thereof, and may, therefore, be exercised by resolution. . . ." *N.J.S.A.* 40:69A–36. The powers statutorily granted to the council include:

a. The override of a veto of the mayor;

b. The exercise of advice and consent to actions of the mayor;

c. The conduct of legislative inquiry or investigation;

d. The expression of disapproval of the removal by the mayor of officers or employees;

e. The removal of any municipal officer for cause;

f. The adoption of rules for the council;

g. The establishment of times and places for council meetings;

h. The establishment of the council as a committee of the whole and the delegation of any number of its members as an ad hoc committee;

i. The declaration of emergencies respecting the passage of ordinances;

j. The election, appointment, setting of salaries and removal of officers and employees of the council, subject to any pertinent civil service requirements and any pertinent contractual obligations, and within the general limits of the municipal budget;

k. Designation of official newspapers;

l. Approval of contracts presented by the mayor;

m. Actions specified as resolutions in the "Local Budget Law" (N.J.S. 40A:4–1 et seq.) and the "Local Fiscal Affairs Law" (N.J.S. 40A:5–1 et seq.); and

n. The expression of council policies or opinions which require no formal action by the mayor.

[*Ibid.*]

Stated generally, then, the mayor-council plan under the Faulkner Act vests in the mayor the responsibility for administrative and executive operations of the municipality, while reposing the ultimate legislative and concomitant investigative responsibilities in the council. It is this division of responsibilities that generates the controversy before us.

## B.

Since at least 1986, Sharpe James, the duly elected Mayor of the City of Newark (Mayor), proposed municipal budgets that included appropriations to fund contracts for consulting services to be performed by consultants that the City Council of Newark (City Council) would retain to assist it in carrying out its legislative, investigatory, and auditing responsibilities under the Faulkner Act. In practice, once the budget was adopted, City Council adopted resolutions—and not ordinances requiring the Mayor's approval—by which City Council retained the consultants it deemed necessary to carry out its obligations. Until 1995, City Council directly entered into those consultant contracts on its own authority. In 1995, however, the City's Corporation Counsel advised City Council that, because the Council President votes on the resolutions by which the consultant contracts are awarded, the City Clerk was the official authorized to sign the contracts. Thus, starting in August 1995, a new, three-step procedure was put into effect: City Council would adopt a resolution authorizing entry into a consultant contract, the resolution would be reviewed and approved by the City's Corporation Counsel and, with Corporation Counsel's approval, the City Clerk would execute the consultant contract.

In 2002, following the Mayor's re-election for a fifth consecutive term, Joanne Y. Watson, the City's current Corporation Counsel, undertook an analysis of the Mayor's and City Council's rights and obligations under the Faulkner Act as then practiced in Newark. Corporation Counsel opined that the existing practice of City Council was in derogation of the Faulkner Act because, Corporation Counsel reasoned, *N.J.S.A.* 40:69A–40j and –40g expressly empower only the Mayor with the statutory authority to negotiate and sign contracts on behalf of the City of Newark. As a result, Corporation Counsel's office refused to approve any resolution-based contracts. For that reason, Daniel Gonzalez, the City's Director of Finance, who is charged pursuant to *N.J.S.A.* 40:69A–48 with "the control of all payments out of any public funds by

individual warrant for each payment to the official having custody thereof," refused to certify funds for the challenged contracts. Corporation Counsel's actions created two categories of affected contracts: those contracts previously approved by both City Council and Corporation Counsel for which funds had been certified by the Director of Finance and that had been either partially or fully performed but remained unpaid, and those contracts for new services that had been approved by City Council but rejected by Corporation Counsel. Ultimately, those consultants that provided services to City Council under resolutions approved by City Council and Corporation Counsel and for which funds had been certified by the Director of Finance were paid in full,[1] leaving in dispute only the consultant contract resolutions rejected by Corporation Counsel. This latter category consists of some fifteen separate contracts involving, in the aggregate, over $1.7 million.

In February 2003, City Council commenced this action by filing a verified complaint seeking injunctive and declaratory relief compelling the Mayor, Corporation Counsel and the Director of Finance to return to the *status quo ante*, whereby City Council independently could contract with a consultant by a resolution of City Council approved as to form by Corporation Counsel and for which funds were certified by the Director of Finance. The Mayor, Corporation Counsel and the Director of Finance responded by seeking their own declaration that "only the Mayor can initiate, negotiate[,] present and sign contracts for the City of Newark under the Faulkner Act, subject to any exceptions that may exist under the general law of this State, which contracts can then be accepted or rejected by the Municipal Council in accordance with the procedures set forth in the Faulkner Act." They also sought an injunction prohibiting City Council from "initiating, negotiating, awarding and executing contracts, or directing the City Clerk or others to initiate, negotiate, award and execute contracts on its or the City's behalf, in contravention of the

---

[1] This was achieved by a stipulation offered by the Mayor and accepted by City Council and tendered to the trial court.

Mayor's statutory right and duty to negotiate, present and sign such contracts."

As provided in *Rule* 4:67–5, a consolidated preliminary and final hearing on both City Council's complaint and the counterclaim pressed by the Mayor, Corporation Counsel and the Director of Finance was held on May 30, 2003. The trial court denied with prejudice City Council's applications to have its pending contract resolutions approved by Corporation Counsel and the funds therefor certified by the Director of Finance. Instead, the trial court granted declaratory judgment in favor of the Mayor, Corporation Counsel and the Director of Finance, holding that "under the Faulkner Act, the Mayor is responsible for initiating, negotiating and signing contracts and the Council is responsible for approving or rejecting those contracts presented by the Mayor." The trial court determined that

> the Municipal Council does not have the authority unilaterally to retain consultants and professionals within the context of the contracts that have been provided in this litigation; that those powers may not be exercised or executed by the Council President or by the city clerk nor may such contracts be negotiated on behalf of the Municipal Council by the city clerk or his designee.
>
> And the Court further finds that the power of the chief executive with respect to the contracts in question are [sic] clearly those which fall within the exercise of his broad administrative and executive discretion and policymaking responsibilities vested in him by the Legislature,.... The Court finds certainly that there is no authority in the City Council to indeed negotiate those contracts nor to—to tell the Mayor to certify the funds in furtherance of—of the implementation of those contracts.
>
> The court therefor cannot and will not enjoin or restrain defendants from interfering with the performance of contracts in—in—in question. The Court will declare that the actions of the defendant, the Mayor of the City of Newark in his exercise of discretion in his refusal to certify funds for the contracts in question were entirely within the scope of his executive administrative and policy discretion. And the Court will declare as a matter of law that the contracts as they are presented within the perspective of the issues in this case as they pertain to either legislative, investigatory or auditing responsibilities may not be negotiated unilaterally but are part of a cooperative effort as spelled out explicitly under the powers delegated under the Faulkner Act.

City Council appealed, and the Appellate Division, in an unpublished per curiam opinion, affirmed the judgment of the trial court. *Municipal Council of the City of Newark v. James,* No. A–5578–

02T1 (App.Div. Jun. 24, 2004). We granted City Council's petition for certification, 182 *N.J.* 141, 861 *A.*2d 845 (2004).

## II.

We are called on to resolve a discrete governance dispute between City Council and the Mayor based on strict principles of statutory interpretation: whether City Council has the implied authority to enter into contracts in furtherance of its statutory duties under *N.J.S.A.* 40:69A–36. In its simplest form, City Council claims it cannot discharge its statutory obligations without the necessary tools and that the ability to retain and pay consultants or experts is one of those tools. According to City Council's analysis, it stands to reason that City Council should be able to retain its own lawyers, accountants, and experts in the discharge of its statutory obligations, all without the Mayor's involvement. As a threshold matter, City Council asserts that the 1985 amendment to Section 32 of the Faulkner Act, *N.J.S.A.* 40:69A–32(b) (the Lynch Amendment), specifically provides that authority. We disagree.

## A.

In construing the meaning of a statute, our task is well defined:

Construction of any statute necessarily begins with consideration of its plain language. *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 128, 527 *A.*2d 1368 (1987); *Renz v. Penn Cent. Corp.,* 87 *N.J.* 437, 440, 435 *A.*2d 540 (1981). Such language should be given its ordinary meaning, absent a legislative intent to the contrary. *Town of Morristown v. Woman's Club,* 124 *N.J.* 605, 610, 592 *A.*2d 216 (1991); *Mortimer v. Board of Review,* 99 *N.J.* 393, 398, 493 *A.*2d 1 (1985); *Levin v. Township of Parsippany–Troy Hills,* 82 *N.J.* 174, 182, 411 *A.*2d 704 (1980). The primary task for the Court is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." *State v. Maguire,* 84 *N.J.* 508, 514, 423 *A.*2d 294 (1980) (footnote omitted). The Court fulfills its role by construing a statute in a fashion consistent with the statutory context in which it appears. *Waterfront Comm'n v. Mercedes–Benz,* 99 *N.J.* 402, 414, 493 *A.*2d 504 (1985).

[*Merin v. Maglaki,* 126 *N.J.* 430, 434–35, 599 *A.*2d 1256 (1992).]

*See also Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001) ("When dealing with questions of statutory construction, the Court first considers the plain meaning of the provision at issue."); *N.J.S.A.* 1:1–1 ("In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.").

■ It is clear that the Faulkner Act envisions a tension between the executive and legislative branches of municipal government, one functionally similar to the tension inherent in any republic that provides for coordinate branches of government.

> Although the separation of powers doctrine applied to federal and state governments is not generally applicable to [the] mayor-council plan of government, "the Faulkner Act plainly envisages some separation of functions between the Council (the legislative body) and the Mayor (the executive)." *In re Shain,* 92 *N.J.* 524, 537, 457 *A.*2d 828 (1983). That separation of functions imposes "certain limits on the Mayor and local council in governing the municipality." *Id.* at 538, 457 *A.*2d 828. Principles of separation of powers are applicable where the Legislature has specifically delegated to the mayor and to the council separate functions. . . . Where one branch of government has been specifically vested with the authority to act in a prescribed manner, neither of the other branches may usurp that authority. *N.J.S.A.* 40:69A–32(b); *Communications Workers v. Florio,* 130 *N.J.* 439, 463–64, 617 *A.*2d 223 (1992); *David v. Vesta Co.,* 45 *N.J.* 301, 326, 212 *A.*2d 345 (1965). [*Casamasino v. City of Jersey City, supra,* 158 *N.J.* at 343, 730 *A.*2d 287.]

The tension addressed in *Casamasino v. City of Jersey City, supra,* between and among branches of municipal government governed by the Faulkner Act requires that each hews closely to its statutory authority while, at the same time, cooperating with its coordinate branches. That obligation to cooperate, as both the trial court and the Appellate Division properly recognized, is the core of this case.

■ The Faulkner Act's mandate is clear and unmistakable: the Mayor is charged with the duty to negotiate and sign, subject to City Council's approval, contracts that bind the City, *N.J.S.A.* 40:69A–40(j) and –40(g), and City Council is charged with the duty

of "[a]pproval of contracts presented by the mayor." *N.J.S.A.* 40:69A–36(*l*). There can be no room here for the interpretation advanced by City Council that would reserve the responsibility for negotiating and signing contracts for City Council's consultants to City Council alone.

This conclusion is underscored by the 1985 Lynch Amendment to the Faulkner Act, where the Legislature amended that portion of the Faulkner Act that split the governance responsibilities between an elected council and an elected mayor so as to provide:

> For the purpose of the construction of all other applicable statutes, *unless the explicit terms and context of the statute require a contrary construction, any administrative or executive functions assigned by general law to the governing body shall be exercised by the mayor, and any legislative and investigative functions assigned by general law to the governing body shall be exercised by the council.* Those functions shall be exercised pursuant to the procedures set forth in this plan of government, unless other procedures are required by the specific terms of the general law.
>
> [*N.J.S.A.* 40:69A–32(b) (emphasis supplied).]

In relevant part, the Faulkner Act defines "general law" as "any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities...." *N.J.S.A.* 40:69A–28. Because the Faulkner Act explicitly empowers the Mayor to negotiate and sign all contracts, *N.J.S.A.* 40:69A–40(j) and –40(g), one need not engage in the exercise of parsing out the allocation of responsibilities set forth in the Lynch Amendment.

### B.

Despite the Faulkner Act's separation of functions between the Mayor and Council, which specifically empowers the Mayor to negotiate and sign contracts, City Council advances three primary reasons it believes undergird its conclusion that the procedure by which it retains professional consultants pursuant to resolution, all to the exclusion of the Mayor, is consonant with the provisions of the Faulkner Act.

City Council first relies on a trinity of authorities for its argument that, as a matter of law, it is entitled unilaterally to

issue contracts for consultant services. These are the Lynch Amendment, the opinion of the Appellate Division in *Newark City Council v. James*, 232 *N.J.Super.* 449, 557 *A.*2d 683 (App.Div.), *certif. denied*, 117 *N.J.* 166, 564 *A.*2d 883 (1989), and the Governor's Reconsideration and Recommendation Statement, *Statement to Senate Bill 1206* (Aug. 28, 1985) (Governor's Conditional Veto Statement). None of those authorities, however, is either persuasive or controlling. We have already rejected the interpretation of the Lynch Amendment advanced by City Council. More to the point, the Lynch Amendment does not address the Faulkner Act's direct division of authority between council and the mayor on the question of contracts and, therefore, is inapplicable. *Newark City Council v. James*, *supra*, is inapposite; it did not involve an issue directly addressed by the Faulkner Act such as the negotiation and entry into contracts binding on the municipality. Rather, it involved a topic that was not specifically addressed in the Faulkner Act—the sale of city-owned property. Hence, *Newark City Council v. James*, *supra*, provides little guidance here.[2] City Council's last source of authority, the Governor's Conditional Veto Statement, also does not advance City Council's position because it does not even address the particulars of the Lynch Amendment.

As its secondary position, City Council again looks to the Lynch Amendment, claiming that, because its purpose was to delineate

---

[2] In *Newark City Council v. James*, *supra*, the Appellate Division held that a provision of the Local Lands and Buildings Law, *N.J.S.A.* 40A:12–13, authorizing the sale of realty owned by a city pursuant to either a resolution or ordinance by city council, and not to the mayor, the authority to sell such realty and under what conditions such sale was to be effected. That decision, however, has been overruled by statute. In 2004, the Legislature amended the Local Lands and Buildings Law to include *N.J.S.A.* 40A:12–13.9, which now requires the *mayor's* prior approval for, and delegates to the mayor or his designee all administrative functions concerning, "the transfer, exchange, lease, acquisition, and conveyance of municipal property ... subject to approval by the municipal council." The purpose for the Legislature's adoption of *N.J.S.A.* 40A:12–13.9 was patent: "This bill is specifically intended to overrule the holding in *Council of the City of Newark v. James*, 232 *N.J.Super.* 449, 557 *A.*2d 683 (App.Div.1989),....." Senate Community and Urban Affairs Committee, *Statement to Senate Bill No. 967*, at 1 (Mar. 1, 2004).

more clearly the roles of the mayor and council in the mayor-council form of government provided in the Faulkner Act, the council must perforce have the authority to enter into contracts on its own. That construction, however, finds no basis in the Lynch Amendment, which clearly states that *"unless the explicit terms and context of the statute require a contrary construction,* any administrative or executive functions assigned by general law to the governing body shall be exercised by the mayor, and any legislative and investigative functions assigned by general law to the governing body shall be exercised by the council." *N.J.S.A.* 40:69A–32(b). In light of the assignment of contracting duties already set forth in the Faulkner Act, the Lynch Amendment reasonably cannot be read to extend as far as City Council would have it reach.

Finally, City Council argues that, because Section 5 of the Local Public Contracts Law, *N.J.S.A.* 40A:11–5, allows the governing body to purchase professional services by resolution and without public advertisements or competitive bids, it can purchase professional services without any input from the Mayor. We reject City Council's expansive reading of the Local Public Contracts Law because, simply, it is contrary to the balanced scheme created by the mayor-council plan of government under the Faulkner Act. As provided by the relevant provisions of the Optional Municipal Charter Law, *N.J.S.A.* 40:69A–32(a), the governing body of a mayor-council municipality consists of *both* the mayor *and* the council. Although administrative or executive functions are the province of the mayor alone, the council is entrusted with legislative and concomitant investigative functions. *N.J.S.A.* 40:69A–32(b). Notwithstanding that access to consultants at times may be a necessary ancillary to City Council's legislative and investigative functions, the actual contracting for consultants remains an administrative or executive function statutorily entrusted to the mayor. Stated differently, City Council cannot, under the aegis of issuing a resolution for the direct and independent contracting of consultants (a process over which the mayor has no control), do indirectly what the Faulkner Act specifically provides it cannot do direct-

ly. City Council's reasoning would swallow whole the traditional functioning of the executive under the mayor-council plan of government authorized by the Faulkner Act.

## C.

That said, the Faulkner Act places a heavy burden on both the Mayor and City Council: they must work cooperatively for the ultimate benefit of all of the citizens of Newark. That is the bedrock on which interactions between the Mayor and City Council must develop. There are and will continue to be instances when either the Mayor or City Council should subordinate their respective authority as a matter of simple social harmony and proper statesmanship. At argument, all parties acknowledged that this case presents a fair example of when such cooperation must come to the fore. Because City Council had to sue Corporation Counsel, among others, it was self-evident that City Council needed to retain its own counsel to prosecute this cause. The logic of that example provides a lesson for future interactions between City Council and the Mayor, particularly in those instances where their respective interests are in conflict.

## III.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, WALLACE, and RIVERA–SOTO—6.

*Opposing*—None.