40 A.3d 1148 (2012)
425 N.J. Super. 245
BOROUGH OF PITMAN, Plaintiff-Appellant,
v.
MONROE SAVINGS BANK, SLA, Defendant-Respondent.
No. A-3113-10T1
Superior Court of New Jersey, Appellate Division.
Argued December 7, 2011.
Decided March 29, 2012.
*1149 John A. Moustakas argued the cause for appellant (Law Offices of Brian J. Duffield, attorneys; Mr. Moustakas, on the briefs).
Richard S. Kaser, Williamstown, argued the cause for respondent (Kaser & McHugh, P.A., attorneys; Mr. Kaser, on the brief).
Before Judges LIHOTZ, WAUGH and ST. JOHN.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
Plaintiff the Borough of Pitman (the Borough) appeals from an order relieving defendant Monroe Savings Bank, SLA (Monroe) of liability for payment of previously imposed penalties for fire code violations on realty Monroe acquired by Sheriff's deed, following entry of a final judgment of foreclosure. The Borough made the fire code violation assessments against the prior owner of the realty, but had not recorded its judgment prior to entry of Monroe's final judgment of foreclosure.
The Borough initiated this matter seeking to enforce Monroe's payment of the fire assessment penalties, arguing the penalties were not subject to elimination through foreclosure. The motion judge disagreed and concluded the Borough was precluded from enforcement and Monroe "holds the property free and clear of any claim of the Borough ... for fines and penalties assessed against the prior owner[.]" *1150 The Borough appeals, arguing the court erred as a matter of law. We affirm.
The facts are derived from evidence submitted by the parties in support of, and in opposition to, the summary judgment motions, and are viewed in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995).
On January 23, 2008, Ryan Pierson, the Borough's Fire Official, conducted a routine inspection of realty located on Pitman Avenue (the property). The property was owned by RAMA Enterprises (RAMA), trading as the Hotel Pitman. Pierson's inspection identified forty-six fire code violations and the Borough served RAMA with a Notice of Violations and an Order to Correct Fire Code Violations. RAMA took no action as it no longer operated the hotel and was virtually insolvent. Consequently, the Borough issued an Order to Pay Penalty and Abate Violations, assessing an aggregate penalty of $20,000. When RAMA did not pay the sums set forth in the administrative penalty order, additional penalties were assessed, increasing the total obligation to $44,000.
The Borough initiated legal action for satisfaction of the penalties against RAMA and its sole shareholder and director, David Marquez. A Law Division judgment was entered against RAMA, but dismissed as to Marquez, who had filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code. Judgment in favor of the Borough was recorded as a lien on January 26, 2010.
Monroe acquired an equitable interest in the property through a mortgage it extended to RAMA, which was recorded in the Gloucester County Clerk's Office on July 15, 1996. Following RAMA's default, Monroe filed a foreclosure complaint on July 29, 2008. A final judgment foreclosing all interests in the property and a Writ of Execution were filed on September 20, 2009. As the successful bidder at Sheriff's sale, Monroe obtained title to the property through a January 6, 2010 Sheriff's Deed. Once it obtained ownership, Monroe demolished the structure on the property, eliminating the fire code violations.
The Borough initiated this matter, seeking Monroe's payment of the $44,000 penalty, originally assessed against RAMA. Cross-motions for summary judgment were filed. In an oral opinion, the motion judge reviewed whether the unrecorded fire assessment penalties became a municipal lien superior to the mortgage or whether the final judgment of foreclosure eliminated the Borough's claim. The motion judge concluded the penalties did not enjoy the same statutory priority as municipal tax liens. Accordingly, he granted Monroe's motion for summary judgment and barred the Borough's claim for payment of the fire assessment penalties because its judgment was recorded after entry of the final judgment of foreclosure.
The Borough moved for reconsideration, which was denied. This appeal ensued.
On appeal, the Borough argues the motion judge ignored statutory provisions, which impose liability for unpaid fire assessment penalties on a subsequent owner of realty and asserts the obligation for payment is unavoidable, despite entry of a foreclosure judgment. Monroe disagrees, maintaining the motion judge correctly discerned the fire assessment penalties did not enjoy an enhanced priority, such as municipal tax liens, and therefore, the Borough's interest in the property, if any, was foreclosed.
Issues of statutory interpretation are questions of law requiring our independent review. Cty. of Bergen Emp. Benefit Plan v. Horizon Blue Cross Blue Shield of N.J., 412 N.J.Super. 126, 131, 988 A.2d 1230 (App.Div.2010) (citing In re Liquidation of Integrity Ins. Co., 193 N.J. 86, *1151 94, 935 A.2d 1184 (2007)). When examining such questions, we independently consider whether the motion judge's application of the law was correct and need not defer to "[a] trial court's interpretation of the law and legal consequences that flow from established facts[.]" Manalapan Realty L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
When interpreting statutes, our overriding goal must be to determine the Legislature's intent. O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002). See also N.J.S.A. 1:1-1 (stating statutory "words and phrases shall be read and construed with their context, and ... be given their generally accepted meaning, according to the approved usage of the language"). Specific rules of construction guide our review. See Ibid.
We begin with consideration of the statute's plain language, Mun. Council of Newark v. James, 183 N.J. 361, 370, 873 A.2d 544 (2005), remaining mindful that we "may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell, supra, 171 N.J. at 488, 795 A.2d 857. Also, common law definitions of statutory terms must be assigned, unless evidence exists suggesting the Legislature intended otherwise. See DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (stating courts ascribe the "ordinary meaning and significance" to statutory terms).
We also note "statutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole." Bedford v. Riello, 195 N.J. 210, 224, 948 A.2d 1272 (2008). "The Court fulfills its role by construing a statute in a fashion consistent with the statutory context in which is appears." James, supra, 183 N.J. at 370, 873 A.2d 544 (internal citations omitted).
If we conclude the statutory language is ambiguous and there is more than one plausible interpretation, we may consider extrinsic evidence, including the legislative history of the statute. Burnett v. Cnty. of Bergen, 198 N.J. 408, 421, 968 A.2d 1151 (2009). Further, when a "`literal interpretation of individual statutory terms or provisions' would lead to results `inconsistent with the overall purpose of the statute,' that interpretation should be rejected." Hubbard v. Reed, 168 N.J. 387, 392-93, 774 A.2d 495 (2001) (quoting Cornblatt v. Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998)).
We consider the legislative pronouncements relied upon by the parties in support of their respective positions. These include the basis of the Borough's assessments and its claim of a priority lien, as well as the principles cited by Monroe governing the effect of a foreclosure judgment.
The Legislature adopted the Uniform Fire Safety Act (the Act), N.J.S.A. 52:27D-192 to -213, to ensure that "`[a]ll areas of the State are protected by a uniform, minimum, fire safety code which will protect the lives and property of the State's citizens.'" Baboghlian v. Swift Elec. Supply Co., 197 N.J. 509, 517, 964 A.2d 304 (2009) (quoting N.J.S.A. 52:27D-195a). As "remedial legislation," the statute "shall be liberally construed to effectuate these purposes." N.J.S.A. 52:27D-193. Further, "[p]enalties for violators are both swift and commensurate with the gravity of the offense." N.J.S.A. 52:27D-195c.
In accordance with the Legislative grant of authority in the Act, the Commissioner of the Department of Community Affairs promulgated the regulations, N.J.A.C. 5:70-1.2. The Uniform Fire Safety Code (the Code), N.J.A.C. 5:70-1.1 to -4.20, assures fire safety measures are in effect in *1152 the operation of buildings, "for the safeguarding... of life and property from the hazards of fire and explosion[.]" N.J.A.C. 5:70-1.3(a).
The Code imposes an affirmative obligation on property owners "for the safe and proper maintenance of the premises at all times." N.J.A.C. 5:70-2.2(a). An owner is defined as "a person who owns, purports to own, manages, rents, leases or exercises control over a building, structure, premises, or use, or a portion thereof." N.J.A.C. 5:70-1.5. "A violation of the Code occurs when `an officer, agent or employee under his control and with his knowledge has violated or caused to have violated any of the provisions of this Code.'" Baboghlian, supra, 197 N.J. at 517, 964 A.2d 304 (quoting N.J.A.C. 5:70-2.2(d)).
The Code also obligates any "[s]ubsequent owner or those succeeding to control over the premises [who] shall be responsible for correcting unabated violations and for the payment of outstanding fees and/or penalties whether or not they have requested a certificate of fire code status." N.J.A.C. 5:70-2.2(e).
As additional support, the Borough cites N.J.S.A. 52:27D-210f, which states:
A person who purchases a property without having obtained a certificate stating that there are no unabated violations of record and no unpaid fees or penalties shall be deemed to have notice of all violations of record and shall be liable for the payment of all unpaid fees or penalties.
Reading the statute and the clarifying regulation together, the Borough concludes the penalties were unaffected by Monroe's action to foreclosure interests in the property because the penalties attach to the owner of the property rather than the property itself. The Borough maintains once Monroe accepted the Sheriff's deed, it became the subsequent owner of the property, and cannot evade the obligation to satisfy the outstanding penalty assessments pursuant to N.J.S.A. 5:70-2.2(e). Further, the Borough argues Monroe had the burden to inquire of the Fire Official whether outstanding penalties existed prior to taking title; its failure to do so will not abrogate the statutory obligation to satisfy the previously assessed penalties.
In response, Monroe argues the Act does not elevate Code penalties to "super priority" status over previously recorded mortgage debts or judgments, as is the case with municipal tax liens, which enjoy such priority under N.J.A.C. 54:5-9. Rather, Monroe maintains the penalties can be enforced in an action brought as a summary proceeding in Superior Court pursuant to the Penalty Enforcement Law of 1999 (the PEL), N.J.S.A. 2A:58-11 to -12, making them no different than other judgments. Consequently, the penalties are subject to elimination by a final judgment of foreclosure, pursuant to N.J.S.A. 2A:50-30, which states:
In any action for the foreclosure of a mortgage upon real ... property ... all persons claiming an interest in or an encumbrance or lien upon such property, by or through any conveyance, mortgage, assignment, lien or any instrument which, by any provision of law, could be recorded, registered, entered or filed in any public office in this state, and which shall not be so recorded, registered, entered or filed at the time of the filing of the complaint in such action shall be bound by the proceedings in the action so far as such property is concerned, in the same manner as if he had been made a party to and appeared in such action, and the judgment therein had been made against him as one of defendants therein[.]
The Borough rejects any contention that it may only obtain payment through enforcement of a judgment. It notes neither *1153 the Code nor the Act requires a municipality to record a penalty obligation as a lien against the property in order to obtain payment and emphasizes that the obligation attaches to ownership rather than to the property. We note this argument contradicts the Borough's position taken before the Law Division. At summary judgment, the Borough vehemently argued "the [L]egislature intended that penalties established pursuant to the [Act], be treated as municipal liens akin to municipal tax liens. It is well established municipal tax liens attach to the land and are not assessed against the property owner."
The Borough's "about-face" on this issue deprived the trial court of an opportunity to consider the argument, which is presented for the first time on appeal.
It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest. [Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973) (internal quotation marks and citations omitted).]
The question raised does not relate to the jurisdiction of the trial court, but arguably does address an issue of public interest. In this light, and because the matter solely involves a question of law, we will consider the Borough's contentions.
Following our review, we reject the Borough's suggestion that one who succeeds to ownership of realty through the foreclosure process becomes liable as a "purchaser," N.J.S.A. 52:27D-210f, or "subsequent owner," N.J.A.C. 5:70-2.2(e), and we conclude these provisions do not address acquisition through Sheriff's deed. Moreover, the Legislature specifically incorporated a methodology for the enforcement and collection of Code violation penalties, which requires securing a judgment lien, the enforcement of which is subject to the rules governing the priority of recorded liens.
The Borough is correct that the Act transfers an owner's responsibility "for the safe and proper maintenance of the premises at all times[,]" N.J.A.C. 5:70-2.2(a), including abatement of Code violations to "a person who purchases a property without having obtained a certificate stating that there are no unabated violations of record[.]" N.J.S.A. 52:27D-210f. Also, the Code obligates "subsequent owners" to satisfy outstanding violations and penalties. N.J.A.C. 5:70-2.2(e). The term "subsequent owners" is not defined; however, it is used in conjunction with the phrase "those succeeding to take control over the premises." Ibid. The section also lists persons who may request a certificate from an enforcing agency regarding outstanding Code violations. Ibid. The list includes, "the owner, contract purchaser, transferee or the authorized agent of any of them[.]" N.J.A.C. 5:70-2.2(e)1. However, in discussing the compliance obligations of owners, the Code also provides: "No person shall be required to abate any violations which he has no power to abate or to require to be abated." N.J.A.C. 5:70-2.2(b).
When the entirety of the Code is considered, it is clear the transfer liability provisions are directed toward contract purchasers, who acquire the property from the owner. These requirements assure Code violations are not circumvented by a sale, either for consideration or to a straw party. In this way, a new owner must correct the violations and satisfy the penalties to continue use of the property. In this matter, after obtaining title to the property, Monroe demolished the structure discontinuing its use.
*1154 The significant difference in the types of sales targeted by N.J.S.A. 52:27D-210f and the Code versus a sale by Sheriff's deed is the intervening final judgment of foreclosure. The entry of the foreclosure judgment determines the amount due on a mortgage debt, then bars and forecloses other inferior claimants from encumbering the property until satisfaction of the mortgagee's debt through the Sheriff's sale. Central Penn Nat'l Bank v. Stonebridge, Ltd., 185 N.J.Super. 289, 302, 448 A.2d 498 (Ch.Div.1982). In a foreclosure action, all who have a recorded interest in the property entered subsequent to the lien of the plaintiff are on notice their interests are subject to foreclosure. More important, "our cases have held that N.J.S.A. 2A:50-30 provides the purchaser at a foreclosure sale title free of any unrecorded interest. This is so even if the purchaser at sale, or the mortgagee at whose insistence the sale was held, had notice of [an] unrecorded interest." PNC Bank v. Axelsson, 373 N.J.Super. 186, 191, 860 A.2d 1021 (Ch.Div.2004) (internal citations omitted).
When Monroe filed its foreclosure complaint, the Borough, as a creditor of RAMA, held an unrecorded claim. That status did not change throughout the foreclosure process. Therefore, as a holder of an unrecorded interest, it remains bound by the foreclosure judgment as if it had been made a party to the foreclosure action. N.J.S.A. 2A:50-30.
We also conclude the Legislature did not intend to grant a priority to unpaid Code penalties superior to that of a foreclosing mortgagee who secures a final judgment of foreclosure. Neither the Act nor any other express legislation grants a priority lien position to penalties assessed for Code violations. A review of other statutes makes it clear the Legislature understood its authority to do so, but chose otherwise. See, e.g., N.J.S.A. 54:5-6 (making assessed but unpaid real estate taxes "a continuous lien on the land"). Accordingly, we may not read additional provisions into the statute which the Legislature omitted. See In re Estate of Santolino, 384 N.J.Super. 567, 581, 895 A.2d 506 (Ch.Div.2005) ("If the drafter of a statute mentions one circumstance specifically, the implication is that the other circumstances, which just as logically could have been mentioned, were intentionally omitted.").
Further, the provisions of the Act delineate the authority and procedure for a municipality to secure collection of assessed penalties. The authority of municipalities to adopt an ordinance providing for local enforcement of the Act is found in N.J.S.A. 52:27D-202a. The Act grants "concurrent jurisdiction" between the Commissioner and "local enforcing agencies to enforce [the Act.]" N.J.S.A. 52:27D-204a. A local enforcing agency, (defined in N.J.S.A. 52:27D-196g as including "a municipal... department or agency, or a fire district ... authorized by municipal ordinance to enforce this act"), "may petition the Superior Court for mandatory injunctive relief enforcing an order issued pursuant to [the Act,]" and "to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside, in whole or in part, any order issued pursuant to [the Act]." N.J.S.A. 52:27D-207b. If penalties assessed under an administrative order are not satisfied "by the 30th day after its issuance, the penalty may be sued for, and recovered by and in the name of the commissioner or the enforcing agency, ... in a civil action by a summary proceeding under [the PEL, N.J.S.A. 2A:58-11,] in the Superior Court[.]" N.J.S.A. 52:27D-210c.[1] Finally, the Commissioner, and inferentially *1155 an enforcing agency, is given the power "[t]o hold and exercise all the rights and remedies available to a judgment creditor[.]" N.J.S.A. 52:27D-197d.
Once the penalties are reduced to a lien, a Superior Court judgment affects and binds the property from the time of entry "on the minutes or records of the court." N.J.S.A. 2A:16-1. Finally, the priority of liens attaching to property is determined by the recording dates of mortgages or the docketing of judgments. See New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 411-13, 587 A.2d 1265 (1991) (discussing the purpose of the recording provisions); see also R. 1:13-8 (discussing priorities of liens and encumbrances); Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:13-8 (2012) (discussing the priority and timing of liens). Priority is controlled by the first in time. Markouski, supra, 123 N.J. at 413, 587 A.2d 1265.
Were the Borough's interpretation of the statute accuratethat is, penalties once assessed automatically attach and need not be reduced to a judgmentthe enforcement mechanism set forth in N.J.S.A. 52:27D-210c would be rendered useless. Such a reading violates the principle mandating statutes be construed in a fashion consistent with the statutory content. Reed, supra, 168 N.J. at 392-93, 774 A.2d 495; Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992). We conclude N.J.S.A. 52:27D-210c unmistakably provides for the satisfaction of unpaid penalties, through the use of a defined legal process, by securing a Superior Court judgment against the responsible party and recording that judgment as a lien on the realty.
Interestingly, in this matter, the Borough followed the exact procedure outlined in N.J.S.A. 52:27D-210c to secure payment of its claim. It first filed a Law Division complaint to enforce the May 16, 2008 administrative assessment order against RAMA and its officer; then it obtained a Superior Court judgment on October 30, 2009; and subsequently recorded it on January 23, 2010. Accordingly, payment of assessed Code violation penalties rests with the property owner or a subsequent owner who acquires the property from the owner. A purchaser of the property at Sheriff's Sale is neither a "person who purchases a property" as used in the Act, N.J.S.A. 52:27D-210f, nor a "subsequent owner" as set forth in the Code N.J.A.C. 5:70-2.2(e). Enforcement of the assessed penalties may also be made against the property, if a judgment is secured under the PEL and we conclude such a judgment is accorded priority based on the date it is recorded. Because Monroe's foreclosure judgment was filed before the Borough's civil judgment, any claim the Borough could have enforced has been foreclosed.
Affirmed.
NOTES
[1] N.J.S.A. 52:27D-210c also allows "[a] person who fails to pay immediately a money judgment rendered against him pursuant to this subsection [to] be sentenced to imprisonment by the court for a period not exceeding six months[.]"