691 A.2d 314

WILLIAM DOWLER AND SUSAN DOWLER, HIS WIFE, PLAIN-
TIFFS–RESPONDENTS, v. RONALD BOCZKOWSKI AND CATH-
ERINE BOCZKOWSKI, DEFENDANTS–APPELLANTS.

Argued November 4, 1996—Decided March 25, 1997.

*Jonathan Robinson* argued the cause for appellants (*Schragger, Lavine* and *Nagy*, attorneys).

*Richard Galex* argued the cause for respondents (*Galex, Tortoreti* and *Tomes*, attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal raises two issues: (1) whether the owner of a single-family rental property is under a duty to install one or more smoke detectors in the rented home when not required by law and (2) whether an owner who installs one smoke detector in such a home can be held liable for injuries caused by a fire when the breach of duty alleged is based on the placement of that smoke detector.

The trial court granted summary judgment dismissing the complaint as a matter of law. A divided Appellate Division reversed in an unpublished opinion. The dissent agreed with the trial court that the owner breached no duty as a matter of law. This appeal is before the Court by virtue of the dissent. *R.* 2:2–1(a)(2). We now reverse.

I

Defendants Ronald and Catherine Boczkowski purchased a two-story single-family house in Lawrenceville, New Jersey in 1978. The house had been constructed in 1960. Soon after purchasing the home, it was rented to a family other than plaintiffs. Before renting the house, however, defendants installed a smoke detector on the second floor level where the bedrooms are located. As tenants moved out from time-to-time, the smoke detector frequently disappeared with them. Defendants replaced the smoke detector before the next tenant took possession.

Plaintiffs William and Susan Dowler became tenants under a lease on January 19, 1988. Before their first inspection of the

premises, the owner had relocated the smoke detector to the downstairs hallway that is adjacent to the furnace and the kitchen. The smoke detector was battery operated and was designed to beep when the battery was weak. After plaintiffs took possession of the premises, neither defendants nor plaintiffs performed any maintenance on the smoke detector such as changing the battery. The lease contains no provision regarding the smoke detector.

A fire occurred in the house on June 23, 1988, approximately six months after plaintiffs had taken exclusive possession of the premises. On the day of the fire, Mr. Dowler came home at about 5:30 p.m. after drinking a few beers. He took a shower and fell asleep. The fire was started when one of Mr. Dowler's partially extinguished cigarettes was accidentally transferred by Mrs. Dowler from an ashtray to a paper trash container in the bathroom. The cigarette ignited the trash container while Mr. Dowler was asleep. He was rescued by the local fire department only after he had sustained significant injuries. Mrs. Dowler maintains that the smoke detector was not activated.

Plaintiffs instituted the present litigation on February 27, 1989. They allege that defendants negligently failed to provide a fire protection system to warn them of fire. The trial court found that there was no such duty. In reversing that determination, the Appellate Division viewed the case as one involving a negligent repair of a smoke detector based on defendants' changing the location of the smoke detector. The Appellate Division reasoned that although "a landlord is not liable for nonfeasance where there is no duty to repair, if he voluntarily undertakes a repair he may be held liable for not doing enough." It concluded that a jury question was presented with respect to whether defendants were negligent in placing a single smoke detector in the first floor hallway rather than near the bedrooms located on the second floor. The majority relied on *Bauer v. 141-149 Cedar Lane Holding Co.*, 24 *N.J.* 139, 130 *A.*2d 833 (1957). The dissenting member of the panel found no authority to impose a duty on the landlord of a single-family dwelling to install smoke detectors

when the landlord has relinquished the entire premises to the tenant. The dissenting member of the panel also found that the majority was mistaken in relying on *Bauer*.

## II

Defendants contend that the Appellate Division's reliance on *Bauer* was misplaced. We agree.

In *Bauer*, the defendant was the owner of five adjoining stores. *Id.* at 141, 130 *A*.2d 833. The plaintiffs were tenants in one of the stores who had problems with flooding in the basement. *Ibid.* They kept their goods raised on platforms to protect them from water damage. *Ibid.* After the plaintiffs endured the water problem for about a year, the landlord voluntarily undertook to alleviate the flooding. *Id.* at 141–42, 130 *A*.2d 833. The landlord painted a waterproofing compound on the basement walls, installed sump pumps, paved the area to the rear of the stores, and rebuilt a trough at the rear of the stores. *Id.* at 142, 130 *A*.2d 833. The flooding, nonetheless, continued. *Ibid.*

After two hurricanes caused more flooding and damages, the tenants instituted suit for damages caused by the flooding. *Id.* at 142–43, 130 *A*.2d 833. They maintained that the landlord was liable because it voluntarily undertook repairs to remediate the flooding and that the repairs were negligently performed. *Id.* at 143–44, 130 *A*.2d 833.

This Court held that in the absence of an agreement that provides otherwise, a landlord is under no obligation to the tenant to make repairs or remedy defects that either existed at the beginning of the tenancy or developed thereafter. *Id.* at 145, 130 *A*.2d 833. However, when the landlord voluntarily undertakes to perform a repair, the landlord "is obligated to perform the work in a reasonably careful manner and is liable in damages for his failure to do so." *Ibid.* The Court further stated:

> [T]hough a landlord is not liable for nonfeasance where there is no duty to repair, if he voluntarily undertakes a repair he may be held liable for not doing enough only where his conduct in such circumstances amounts to negligence.

[*Id.* at 149, 130 *A*.2d 833.]

The Court found that the facts of the case indicated that the landlord was not negligent. *Ibid.* The landlord never assured the tenant that the condition causing the flooding had been corrected. *Ibid.* It was observed that even if there was an assurance, it was dispelled prior to the first hurricane. *Ibid.* There was no indication that the plaintiffs had been lulled into any false belief that they would not have any more water problems. *Id.* at 149–50, 130 *A*.2d 833.

It is clear that *Bauer* involved repairs voluntarily undertaken by a landlord after the tenant was in possession of the premises. Thus, the Appellate Division was mistaken when it characterized the installation of the smoke detector as a "repair" for purposes of applying *Bauer.* This is not a defective repair case. There is no evidence in the record that the smoke detector malfunctioned because of the manner in which it was installed.

The *Bauer* Court intended the word "repair" to be accorded its ordinary meaning. *Black's Law Dictionary* defines "repair" as:

> To mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction. The word "repair" contemplates an existing structure or thing which has become imperfect, and means to supply in the original existing structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be.
>
> [*Black's Law Dictionary* 1298 (6th ed.1990) (citation omitted).]

*Webster's Third New International Dictionary* similarly defines "repair" as "the act or process of repairing: restoration to a state of soundness, efficiency, or health." *Webster's Third New International Dictionary* 1923 (1993).

■ In light of those definitions and the common usage of the term "repair," the addition of a smoke detector to a single-family home does not constitute a repair. The installation of a smoke detector simply does not involve a restoration or alteration of something that is imperfect.

■ Apart from whether installation of a smoke detector may constitute a repair under some circumstances, *Bauer* does not

control this case because the smoke detector was installed *prior* to plaintiffs' tenancy. This is not a latent defect case. Absent other requirements of law or the terms of a lease, no reported New Jersey case has imposed liability for patent conditions that pre-date the residential tenancy. All of the cases have focused on the landlord's liability for post-tenancy repairs rather than pre-tenancy repairs. *See, e.g., Bauer, supra,* 24 *N.J.* at 139, 130 *A.*2d 833; *Freddi–Gail, Inc. v. Royal Holding Corp.,* 45 *N.J.Super.* 471, 133 *A.*2d 362 (App.Div.), *certif. denied,* 25 *N.J.* 56, 134 *A.*2d 833 (1957); *Caruso v. Monschein,* 24 *N.J.Super.* 55, 93 *A.*2d 576 (App.Div. 1952). Indeed, the relevant cases cited in *Bauer* all involved repairs by a landlord *after* the tenant had taken possession of the premises. *See, e.g., Grugan v. Shore Hotels Fin. & Exch. Corp.,* 126 *N.J.L.* 257, 18 *A.*2d 29 (E. & A.1941); *LaBrasca v. Hinchman,* 81 *N.J.L.* 367, 79 *A.* 885 (Sup.Ct.1911).

The *Restatement (Second) of Property* provides:

A landlord who, by purporting to make repairs on the leased property while it is in the possession of his tenant, or by the negligent manner in which he makes the repairs, has, as the tenant neither knows nor should know, made the leased property more dangerous for use or given it a deceptive appearance of safety, is subject to liability for physical harm caused by the condition to the tenant or to others upon the leased property with the consent of the tenant or subtenant.
[*Restatement (Second) of Property* § 17.7 (1977).]

The reporter's note to that section states, "[i]t is of no consequence whether the condition which the landlord repairs was present at the time of leasing or arises thereafter.... It should be noted, however, that the landlord is not responsible under the rule of this section for negligent repairs that were made before the tenant's occupancy." *Id.* § 17.7 note 6; *see also* 52 *C.J.S. Landlord and Tenant* § 417(12)(b), at 81–83 (1968) ("[W]here the landlord is under no obligation to make repairs, but undertakes to make them gratuitously, he is under a duty to use reasonable care.... The principles governing the landlord's liability do not apply to repairs made before the relationship of landlord and tenant begins.").

In *Casey v. Estes,* 657 *So.*2d 845 (Ala.1995), a prior tenant installed an above ground gas line to provide fuel to a gas clothes

dryer. *Id.* at 847. Before the new tenants moved in, the landlord inspected the gas pipe for defects. *Ibid.* Seven months after moving in, the plaintiffs were injured when a flash fire erupted as they were lighting a gas heater. *Id.* at 848. The plaintiffs argued that even if the landlord had no duty to inspect and repair latent defects, he should be liable for negligent inspection and repair because the landlord voluntarily undertook the duty. *Ibid.* The Alabama Supreme Court held that the rule urged by the plaintiffs "applies only to repairs made after the relationship of landlord and tenant begins." *Ibid.* Because the landlord inspected the lines before leasing the premises, he could not be liable. *Ibid.*

Courts in other jurisdictions have imposed a similar duty on landlords for their voluntary conduct, but only in cases involving repairs performed after the tenant has occupied the premises. In *Nichols v. Marsden,* 483 A.2d 341 (Me.1984), the plaintiff fell through the front steps of a house she was renting and injured herself. *Id.* at 343. On two occasions prior to the letting, while the landlords-defendants lived in the house, defendant Robert Marsden re-nailed the top board of one of the front steps because it had pulled loose from the frame. *Ibid.* After the letting, the plaintiff and the landlord became aware that the front steps needed additional repairs. *Ibid.* Maine's Supreme Judicial Court acknowledged that a landlord can be held liable if the landlord gratuitously, but negligently, undertakes to repair the leased premises. *Ibid.* In *Nichols,* however, the court held that the landlords could not be held liable under that theory because they "did not attempt to repair the steps *while* the premises were in the Plaintiff's possession." *Ibid.*

In *Allaire v. United States Trust Co.,* 478 *F.Supp.* 826 (D.Vi. 1979), there was a rectangular opening in the corner of a porch floor, intended to be a design feature. *Id.* at 827. The landlord placed several large flower pots around the opening because of its potential danger. *Ibid.* The landlord pointed out the opening to the tenants before the house was rented. *Ibid.* More than a year after moving in, the tenant fell through the opening and was

injured. *Ibid.* The District Court held that even if the placing of the flower pots around the opening was considered a negligent repair, the landlord could not be held liable because the action was taken before the plaintiffs entered into possession. *Ibid.*

■ We thus conclude that the Appellate Division misapplied *Bauer* in two respects. First, placement of the smoke detector in the first floor hallway near the kitchen was not a repair. Second, even if the placement were deemed a repair, the landlord breached no duty owed to plaintiffs, who were in exclusive possession of the premises, because the alleged negligence occurred before the tenancy commenced. In addition, there was no representation or assurance by the landlord that the premises contained an early-alert smoke detector and fire alarm system. The location of the single smoke detector was obvious to plaintiffs and did not create either a latent or dangerous condition. *See Faber v. Creswick*, 31 *N.J.* 234, 242, 156 *A.*2d 252 (1959) (holding that landlord who has knowledge of deceptively concealed dangerous condition has duty to disclose it to tenant prior to or after tenant takes possession).

### III

Defendants argue that the dissenting member of the Appellate Division panel was correct in concluding that an implied warranty of habitability or covenant to repair cannot be extended to impose upon a landlord of a single-family dwelling a duty to install or maintain a smoke detector absent a statute, ordinance, regulation, or decisional law. The Appellate Division majority opinion acknowledged that because a duty was imposed upon defendants pursuant to *Bauer*, it declined to "address the broader questions of whether a landlord has a duty to install a smoke detector in a single-family house, or whether the landlord's implied warranty of habitability applies." Nevertheless, the dissenting member of the panel felt compelled to respond to plaintiffs' contention that the landlord had a duty to install the proper number of smoke detectors at appropriate locations based on the implied warranty of habitability.

In *Marini v. Ireland*, 56 *N.J.* 130, 265 *A.*2d 526 (1970), the Court recognized an implied covenant of habitability and livability fitness for residential dwellings. It was characterized as:

a covenant that at the inception of the lease, there are no latent defects in facilities vital to the use of the premises for residential purposes because of faulty original construction or deterioration from age or normal usage. · And further it is a covenant that these facilities will remain in usable condition during the entire term of the lease. In performance of this covenant the landlord is required to maintain those facilities in a condition which renders the property livable.

[*Id.* at 144, 265 *A.*2d 526.]

The purpose of the covenant is to bestow upon a tenant an additional remedy for a breach. Historically, if a landlord did not honor his or her obligation to make repairs, the tenant's remedy was to claim breach of the covenant to make repairs. *Id.* at 145, 265 *A.*2d 526. In view of the tenant's mutual covenant to pay rent, the tenant had to either claim constructive eviction and vacate the premises or seek to compel the landlord to make the repairs. *Id.* at 145–46, 265 *A.*2d 526. Thus, *Marini* afforded tenants the additional remedy of "terminating the cause of the constructive eviction where ... the cause is the failure to make reasonable repairs." *Id.* at 146, 265 *A.*2d 526. The added remedy permits the tenant to remain in possession, make reasonable repairs, and deduct the cost of the repairs from future rents. *Ibid.* The tenant's recourse to self-help has been extended to permit a reduction in the rent until repairs are made. *Berzito v. Gambino,* 63 *N.J.* 460, 469, 308 *A.*2d 17 (1973).

A breach of the covenant may also expose the landlord to liability for personal injuries caused by the breach. This Court has recognized that the failure to provide proper security in common areas of multiple-dwelling housing may violate the landlord's implied warranty of habitability and livability. *Trentacost v. Brussel,* 82 *N.J.* 214, 228, 412 *A.*2d 436 (1980). A breach of that covenant may expose the landlord to liability for personal injuries caused by criminal assaults. *Ibid.*

The alleged negligent installation of a smoke detector, however, in no way affected the habitability of the home as defined by the

relevant caselaw. There can be no doubt that smoke detectors enhance the safety of a dwelling. But like a loose tread on a stair, the absence of a smoke detector at a given location is readily apparent to a tenant. Plaintiffs never complained to the landlord about the lack of smoke detectors or the placement of the existing smoke detector. Even if they thought additional smoke detectors were required, or the location should be changed, they elected not to make the change and deduct the costs from future rents as *Marini* permitted.

Enabling legislation to require smoke detectors in New Jersey was first enacted in 1975 when the State Uniform Construction Code Act ("Construction Act") became law. *L.* 1975, *c.* 217 (codified at *N.J.S.A.* 52:27D–119 to –141). Pursuant to the Construction Act the Commissioner of the Department of Community Affairs ("the Commissioner") adopted with modifications as the building subcode for New Jersey the model code of the Building Officials and Code Administrators International, Inc., known as the "BOCA Basic Building Code/1975" ("BOCA Code"). *N.J.A.C.* 5:23–3.4 (Supp. Nov. 22, 1976). The BOCA Code became effective, with modifications, January 1, 1977. *See N.J.A.C.* 5:23 Chapter Historical Note. Section 1216.3.4 of the BOCA Code required smoke detectors in all residential dwelling units constructed after January 1, 1977. The number, manner of installation, and location of the smoke detectors were also controlled by the BOCA Code. As noted earlier, the house involved in this case was constructed in 1960. This provision, therefore, would not have required defendants to install or maintain a smoke detector in the house.

Because the BOCA Code applied only to residential units constructed after January 1, 1977, the Legislature acted to fill the void. In 1979, the Hotel and Multiple Dwelling Law, *N.J.S.A.* 55:13A–1 to –28, was amended to require every hotel and multiple dwelling unit to be equipped "with smoke detectors or smoke alarms or both." *L.* 1979, *c.* 419, § 1 (codified at *N.J.S.A.* 55:13A–7.1). That amendment was approved February 8, 1980, but its·

effective date was delayed until sixty days after the Commissioner promulgated implementing regulations. *L.* 1979, *c.* 419, § 3. The single-family home involved in the present case is not a multiple dwelling, defined to mean three or more units of dwelling space. *N.J.S.A.* 55:13A–3(k). This amendment, therefore, would not have imposed a duty on defendants to install or maintain a smoke detector in the leased premises.

In 1991, the Legislature extended the obligation for installation of smoke detectors to existing one- and two-family dwellings constructed before January 1, 1977, when it amended the Uniform Fire Safety Act, *N.J.S.A.* 52:27D–192 to –213. *L.* 1991, *c.* 92, § 1. Since that amendment became effective on June 8, 1991, one- and two-family dwellings have been required to "have a smoke-sensitive alarm device on each level of the structure and outside each separate sleeping area in the immediate vicinity of the bedrooms and located on or near the ceiling." *N.J.S.A.* 52:27D–198.1. Pursuant to implementing regulations, that statute is triggered whenever there is a change in ownership or occupancy of a one- or two-family home constructed before January 1, 1977. *N.J.A.C.* 5:18–2.3.

Although the Uniform Fire Safety Act was enacted in 1983, *L.* 1983, *c.* 383, that statute affords no basis for relief to plaintiffs. At the time of the fire in this case, that statute did not require smoke detectors in single-family rentals.

Consequently, this is an idiosyncratic case. The fire occurred in 1988 in a single-family house that was constructed in 1960, purchased by defendants in 1978, and leased to plaintiffs in 1988. It was not until 1991, some three years after the fire, that the Legislature required smoke detectors in single-family homes built before 1977. Although the Construction Act and the Hotel and Multiple Dwelling Law were in effect when plaintiffs signed the lease, no law required a smoke detector or otherwise regulated the placement of smoke detectors in plaintiffs' single-family home at the time of the fire.

We hold that under the most liberal reading of *Marini,* the covenant of habitability and livability did not require the installation of smoke detectors in single-family homes before the obligation was created by statute and implementing regulations. Because no law required a smoke detector in plaintiffs' home, the placement of a smoke detector away from the bedroom area was not negligent as a matter of law.

## IV

The judgment of the Appellate Division is reversed. The judgment of the trial court dismissing the complaint is reinstated.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.