922 A.2d 860 (2007)
393 N.J. Super. 187
Elizabeth BABOGHLIAN, Individually and as Executrix of the Estate of Vartkes O. Baboghlian, Vartkes Baboghlian Shelter Trust, Vigen Baboghlian, Vartkes K. Baboghlian, Estate of Rahile Baboghlian, and Artistic Furniture & Lighting Co., Inc. and/or Vartkes O. Baboghlian and Elizabeth Baboghlian t/a Artistic Furniture & Lighting Company, Plaintiffs-Appellants,
v.
SWIFT ELECTRICAL SUPPLY., a Corporation, a/k/a Swift Electrical Supply Co., Inc., Swift Electric Supply Co., a Corporation, Swift Electric Supply Co., as Successor-in Interest to Swift Electrical Supply Co., August Sadora, *861 Individually and t/a Swift Electrical Supply Co. and/or Swift Electric Supply Co., and August Sadora, Jr., individually and t/a Swift Electrical Supply Co. and/or Swift Electric Supply Co., Defendants/Third-Party Plaintiffs-Respondents,
v.
JMG Electrical Contractors, Inc., Third-Party Defendant-Respondent, and
Electro Signal Labs, Inc., Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 2007.
Decided May 24, 2007.
*862 Robert E. Rochford, Hackensack, argued the cause for appellants (Winne, Banta, Hetherington, Basralian & Kahn, attorneys; Mr. Rochford, of counsel and on the brief; Helen Griff Weisgal, on the brief).
Janet L. Poletto, Springfield, argued the cause for the Swift/Sadora respondents (Hardin, Kundla, McKeon & Poletto, attorneys; Ms. Poletto, of counsel and on the brief; Adam G. Husik, on the brief).
No brief was filed by any other party.
Before Judges KESTIN, PAYNE and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.T.C. (temporarily assigned).
This case involves a dispute between adjacent property owners whose buildings were damaged by fire and subsequently demolished. The fire began in Swift Electric's building. Plaintiffs assert that Swift had a nondelegable duty under New Jersey's Uniform Fire Code (Code), to apply for a permit and conduct annual inspections in connection with the installation of their fire alarm system, and that the failure to do so breached that duty, causing a delay in the system's activation, which allowed the fire to spread to and destroy plaintiffs' property. We examine the question of whether the duties imposed on property owners by the Code are nondelegable.

I.
Elizabeth Baboghlian and her late husband, Vartkes, owned and operated Artistic Furniture (Artistic), a business engaged in the sale of "high-end furniture and accessories." Artistic occupied a three-story commercial building located at 4401-03 Bergenline Avenue in Union City. Artistic's showroom was on the first floor and inventory was kept in the basement and on the first, second, and third floors of the building.
The Baboghlians, their sons, and Elizabeth's mother resided in an adjoining two-story residential building, which contained several apartments and the business's workshop. The two buildings had separate entrances but were connected internally. The properties were equipped with fire extinguishers and smoke detectors, but not a fire alarm system.
Defendants August Sadora and August Sadora, Jr. owned and operated defendant *863 Swift Electrical Supply Co., Inc. (Swift), which was located in a two-story building adjacent to plaintiffs' property, at 4405-09 Bergenline Avenue. When Swift renovated its property to create a light fixture showroom in 1987, it hired JMG Electrical Contractors, Inc. (JMG) to install a fire alarm system. JMG installed a system manufactured by Electro Signal Labs, Inc. (ESL), with the assistance of an ESL representative. The system consisted of smoke detectors placed throughout the two floors and heat detectors placed in a "peak" or attic area, as well as a fire alarm panel with a telephone line connected to a central station. JMG serviced the system when requested, including checking and cleaning the smoke detectors on January 19, 1990, replacing a water-damaged smoke detector on November 20, 1990, and servicing the fire alarm system on March 19, 1993. JMG never tested any of the heat detectors, and was never requested to do so.
On August 22, 1995, plaintiffs' store was closed. At approximately 4:50 p.m., Elizabeth and Vartkes returned home. At about 5:15 p.m., Elizabeth heard a sound "like a clock ticking." She looked out a window and saw a faintly flashing light. When Elizabeth looked out of her bedroom window, she saw "white billowing smoke," and then observed black smoke from the kitchen window. At 5:25 p.m., Elizabeth called her son and telephoned the Union City Fire Department. Elizabeth's son had briefly left his apartment with a friend around 5:00 p.m., and at that time, had smelled smoke but did not hear a fire alarm. The Baboghlians evacuated their building at 5:30 p.m.
Sadora, Jr. testified he was working at his desk after his father and the employees had finished work at 5:00 p.m. He noticed smoke in the lunchroom and called the operator to report a fire in Swift's building. Sadora, Jr. heard the building's fire alarm sound around 5:30 p.m.
Firemen arrived at approximately 6:00 p.m. According to police reports, the fire officials viewed a "heavy fire condition" upon arriving at Swift's building. One fire captain wrote that he saw "low level smoke near the floor in the [Swift] supply sales area" and when he climbed the stairs to the second floor, he "observed fire at the ceiling level, to the right of the stairs." The fire quickly spread to plaintiffs' property and finally, was brought under control by 11:00 p.m.
The next morning the buildings were inspected by Nicholas C. Recanati, who was the Union City building inspector, the police and fire department inspectors, and at least three private investigators who were allowed to view the property to reconstruct the circumstances of the fire and evaluate the damage. The investigation failed to reveal the fire's exact onset, cause, or point of origin; however, the various examiners concluded that the fire was not intentionally set and that it originated, generally, in the area between the second-floor ceiling and the roof-line near the rear of Swift's building.
After consulting with the municipal engineer and other building officials, Recanati declared plaintiffs' property unsafe and an imminent hazard. Recanati issued a written notification ordering plaintiffs to obtain the necessary permits, pursuant to N.J.S.A. 52:27D-132 and N.J.A.C. 5:23-2.32, to demolish their buildings by August 24, 1995.
On the morning of August 24, plaintiffs and their movers were permitted to enter the first floor of the three-story building to remove inventory. Elizabeth's sons and a videographer videotaped some of the damage on the second and third floors before police ordered them to leave. By evening, plaintiffs salvaged approximately ten to fifteen *864 percent of their business inventory from the showroom but had lost all of their personal property. Plaintiffs' buildings were demolished that evening, and the business never recovered.
Plaintiffs' complaint, filed August 20, 2001, alleged that plaintiffs sustained damages as a "direct and proximate result of defendants' negligence in permitting a hazardous condition to exist, and in failing to provide for sufficient fire-fighting equipment, devices, and other measures to prevent the spread of the fire" that occurred on August 22, 1995. Defendants added JMG and ESL as third-party defendants.[1]
During the fourteen-day jury trial, the legal relationship between Swift and JMG became an important issue. Plaintiffs urged the application of a principal/agent relationship and/or that the obligation to comply with the provisions of the Code was not delegable to its hired contractor, JMG. Plaintiffs' theory of the case was that any negligence of JMG must be deemed the negligence of Swift. The trial court declined to adopt plaintiffs' proposed jury instructions on agency and that compliance with the Code was nondelegable. The jury charge given by the trial court included the following statements:
Liability for injury to others through the escape of fire from premises under a person's control must be predicated upon negligence.
Your analysis then is to focus on whether the owner was negligent in the installation, maintenance[,] or inspection of its fire alarm system so that the reasonably foreseeable result was the spread of the fire to [the] adjacent property[,] which was therefore a proximate cause of the destruction of the property.
The plaintiffs contend that the defendant, [Swift], violated the [U]niform [F]ire [C]ode, in particular that [Swift] did not obtain a permit from the local construction official before installing a fire alarm system. And in addition, [Swift] did not arrange for either the initial inspection upon the installation of the system or the annual inspections every year thereafter.
If you find that the defendant, [Swift], did not comply with the [U]niform [F]ire [C]ode, you may consider that as evidence of negligence. As the trier of the facts, you will have to determine the weight to be given to that evidence as with all the evidence in this case and it is for you ultimately to determine whether the[U]niform [F]ire [C]ode violations constitute negligence as I am defining it for you.
. . . .
[T]he plaintiffs have brought this action against the defendant, Swift Electric. [Swift] . . . denies any negligence on its part but has brought a third-party complaint against JMG in which it contends that should you find that Swift Electric is liable to plaintiff for damages, JMG should likewise be liable to Swift Electric.
During deliberations, the jury submitted two questions seeking clarification. The first query was: "Does an inspection by JMG constitute an `official' inspection or does an `official' inspection need to be conducted by a Union City official?" The second inquiry asked: "Does Swift have to be negligent in order for JMG to be negligent?"
The trial judge responded to the jury's first question by stating that there was no testimony directed to that issue. Then the court reminded the jurors to review the testimony of the Union City fire sub-code official and plaintiffs' expert, and to rely on *865 their recollections of the evidence. In response to the second question, the trial judge instructed: "[I]n order to hold JMG negligent, Swift Electric must be found to be negligent, at least in part[,] so there has to be a finding of negligence as to Swift, at least partially before you get to JMG."
On May 18, 2005, the jury returned its verdict finding Swift negligent, but unanimously concluding that Swift's negligence was not a proximate cause of plaintiffs' damages. Although the jury, in keeping with the court's instruction after not having found Swift liable, did not render a formal verdict as to JMG, it nevertheless indicated on its verdict form that it found JMG negligent, but that JMG's negligence was not a proximate cause of plaintiffs' damages. Judgment was entered dismissing plaintiffs' complaint, with prejudice. Plaintiffs' motions for judgment notwithstanding the verdict or, in the alternative, for a new trial were denied.
On appeal, plaintiffs raise the following arguments for our consideration:
POINT I
DEFENDANTS OWED PLAINTIFFS A NONDELEGABLE DUTY TO COMPLY WITH THE NEW JERSEY UNIFORM FIRE CODE.
POINT II
THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON MATERIAL ISSUES OF LAW, INCLUDING WHEN THE JURY REQUESTED GUIDANCE ON THOSE ISSUES.
POINT III
THE TRIAL COURT IMPROPERLY DISMISSED THE COMPLAINT AS TO AUGUST SODORA, SR.; HE PLAINLY CONSTITUTES AN "OWNER" UNDER THE NEW JERSEY UNIFORM FIRE CODE.
POINT IV
THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED DEFENDANTS' LIABILITY EXPERT TO PRESENT TESTIMONY AND EXHIBITS FAR, FAR BEYOND THE SCOPE OF HIS NEVER AMENDED OR SUPPLEMENTAL EXPERT REPORT.

II.
The Legislature adopted the Uniform Fire Safety Act, N.J.S.A. 52:27D-192 to -213 (UFSA), to ensure that "[a]ll areas of the State are protected by a uniform, minimum, fire safety code which will protect the lives and property of the State's citizens." N.J.S.A. 52:27D-195a. The UFSA delegated to the Commissioner of the Department of Community Affairs (DCA) "all the powers necessary or convenient to effectuate the purposes of this act[,]" N.J.S.A. 52:27D-197, including the power to promulgate "regulations to insure the maintenance and operation of buildings and equipment in such a manner as will provide a reasonable degree of safety from fire and explosion." N.J.S.A. 52:27D-198a. The UFSA directed that the regulations "shall include a uniform fire safety code primarily based on the standards established by [uniform national fire codes]." Ibid.; Venuti v. Cape May County Constr. Bd. of Appeals, 231 N.J.Super. 546, 550, 555 A.2d 1175 (App.Div.1989). The DCA subsequently promulgated the Code,[2] which applied to new and existing buildings. N.J.A.C. 5:18-1.4(a).
The Code was designed "for the safeguarding to a reasonable degree of life and property . . . from conditions hazardous to *866 life or property in the use or occupancy of buildings or premises." N.J.A.C. 5:18-1.3(a). The Code requires buildings identified as "life hazard uses" to install fire alarm systems and to be subject to inspections. N.J.A.C. 5:18-2.5. Other buildings that voluntarily installed any fire alarm system were required by the Code to obtain a construction permit issued by the construction official prior to installation of the system. N.J.A.C. 5:18-3.4(a)2.[3] The Code does not direct the type or nature of the fire protection system to be installed.
The Code required annual inspections of all buildings that installed fire safety systems, N.J.A.C. 5:18-3.4(a)6, and mandated that all tests of any fire alarm system "shall be conducted by and at the expense and risk of the owner or a representative of the owner." N.J.A.C. 5:18-3.4(a)(3). The Code explicitly recognizes that the owner is responsible for the "safe and proper maintenance of the premises at all times." N.J.A.C. 5:18-2.2(a). The Code at N.J.A.C. 5:18-2.2(d) states: "A person shall be deemed to have violated or caused to have violated a provision of this Code if an officer, agent or employee under his control and with his knowledge has violated or caused to have violated any of the provisions of this Code."
Both the UFSA and the Code define "owner" as "a person who owns, purports to own, manages, rents, leases or exercises control over a building, structure or premises." N.J.S.A. 52:27D-196(i); N.J.A.C. 5:18-1.5. It is indisputable that Swift owned the building where the fire originated, making Swift responsible under the Code for the building's safety and maintenance. N.J.A.C. 5:18-2.2(a).

III.
Plaintiffs first argue that the trial court erred in denying the use of proposed jury instructions defining the agency relationship between Swift and JMG. Plaintiff contends that Swift was responsible for the acts of its agent, JMG, which failed to comply with the mandatory permit and initial inspection provisions of the Code when the fire alarm system was installed, N.J.A.C. 5:18-3.4(a)2, and the inspection requirements during the eight subsequent years when annual inspections or testing were required pursuant to N.J.A.C. 5:18-3.4(a)6.
We disagree with this contention. The Code expressly limits an owner's liability for an agent who commits a Code violation. N.J.A.C. 5:18-2.2(d). The agent specifically must be under the control of and act with the knowledge of the owner for liability to attach to the owner. Ibid. In this matter, no evidence was presented showing that Swift controlled the work of JMG or that Swift had knowledge of JMG's violations of the Code. The absence of a "master-servant" relationship between Swift and JMG defeats the applicability of the law of agency. Ibid.; see also JMB Enters. v. Atl. Employers Ins. Co., 228 N.J.Super. 610, 617, 550 A.2d 764 (App. Div.1988).
Plaintiffs next challenge Swift's assertion that it had no liability stemming from the negligent installation of the fire safety system by JMG and stemming from JMG's other allegedly negligent acts of failing to obtain a permit and initial inspection and to conduct subsequent inspections. See Puckrein v. ATI Transport, Inc., 186 N.J. 563, 574, 897 A.2d 1034 (2006). Plaintiffs argue that, in this regard, the trial court's failure to instruct the jury that the obligations imposed on owners by the Code are nondelegable was error. Plaintiffs *867 state, "[a]s owners of the property, defendants owed plaintiffs a non[]delegable duty to comply with the mandatory provisions of the [Code]." Thus, any negligence by JMG must be attributable to Swift.
While the general rule of law limits a contractee's liability when engaging an independent contractor, see Mavrikidis v. Petullo, 153 N.J. 117, 133, 707 A.2d 977 (1998); Majestic Realty Assocs., Inc. v. Toti Contracting Co., 30 N.J. 425, 431, 153 A.2d 321 (1959), the Supreme Court has enunciated exceptions to the general rule's application. "There are three such exceptions, as delineated by the Majestic Court: `(a) where the landowner [or principal] retains control of the manner and means of the doing of the work which is the subject of the contract; (b) where he engages an incompetent contractor; or (c) where . . . the activity contracted for constitutes a nuisance per se.'" Mavrikidis, supra, 153 N.J. at 133, 707 A.2d 977 (quoting Majestic, supra, 30 N.J. at 431, 153 A.2d 321). These exception have no applicability to this matter generally, or to the imposition of an owner's duties enunciated in the Code, specifically.
However we have recognized another exception that arises "[i]n cases involving a significant risk of grave harm, . . . the duty owed to the public may be too important to allow its delegation to an independent contractor, and therefore the legislature or the court may impose a nondelegable duty on the principal." Great Northern Ins. Co. v. Leontarakis, 387 N.J.Super. 583, 591, 904 A.2d 846 (App. Div.2006). The applicability of that exception to the various acts of alleged negligence attributed to Swift requires further analysis.
In Leontarakis, the defendant employed an independent contractor for the excavation of the foundation to build his home on a lot adjacent to the plaintiff's property. Id. at 588, 904 A.2d 846. As a result of the contractor's performance, the plaintiff's structure was damaged as it suffered the loss of lateral support. Id. at 589, 904 A.2d 846. We explained, "[t]he primary reason for imposing a nondelegable duty on the principal [for negligent acts of the independent contractor] is that the duty is of extraordinary importance to the public." Id. at 592, 904 A.2d 846; see also Restatement (Second) of Torts § 424 (1965) (one bearing duty to provide specified safeguards for the safety of others imposed by statute or administrative regulation is liable for harm caused by contractor's failure to provide such safeguards); Majestic, supra, 30 N.J. at 439, 153 A.2d 321 (duty may be nondelegable where its "social value to the community is so significant that the law cannot allow it to be transferred to another"); Marek v. Prof'l Health Servs., Inc., 179 N.J.Super. 433, 440-41, 432 A.2d 538 (1981) (duty's importance to the community determines whether it may be delegated), appeal dismissed, 93 N.J. 232, 460 A.2d 645 (1981).
We cannot agree with the sweeping assertion by plaintiffs, which suggests Swift retains liability for all negligent acts of JMG merely because JMG installed a fire safety system, triggering the application of the Code. The Code's requirements imposed on an owner who voluntarily installs a fire safety system include obtaining the initial permit, submittal of the system's plans to the fire sub-code official, arranging an initial system inspection after installation, and scheduling annual system inspections thereafter. See N.J.A.C. 5:18-3.4(a). As noted above, the Code does not mandate the type and nature of the fire safety equipment installed in a non-life hazard building. Therefore, the decision to place smoke detectors in certain portions of Swift's building and heat detectors in others was not governed by Code requisites. *868 Even plaintiffs' expert conceded that it was reasonable for a property owner, such as Swift, to rely upon a fire safety system's installer, such as JMG, to properly design the system using appropriate equipment. Plaintiffs' suggestion that Swift was liable because improper equipment was installed has no relationship to the assertion that Swift's duties under the Code were breached.
If the Code imposes a nondelegable duty on an owner who engages another to install a fire safety system, it is only those defined duties in the Code that cannot be abandoned. We are persuaded by the plaintiffs' argument that the specific duties imposed on a property owner under the Code are nondelegable because they direct action in an area designed to promote and protect public safety. N.J.S.A. 52:27D-195(a). The Legislature recognized "the need for strict fire safety codes as minimum standards for the maintenance and upgrading of existing properties" to protect all areas of the State "by a uniform, minimum fire safety code which will protect the lives and property of the State's citizens." N.J.S.A. 52:27D-194g and -195a. The Code also identifies that the need for prescribing fire safety and prevention regulations is a "nationally recognized good practice." N.J.A.C. 5:18-1.3(a).
Without question, fire poses a "significant risk of grave harm" not only to the engulfed premises, but also to people and properties within the vicinity of the blaze. Enforcement of fire safety and prevention of the hazards of fire are significant to the community good.
The statute, UFSA, and its implementing regulations, the Code, place the responsibilities defined in them directly on property owners implementing fire safety procedures. Obtaining a permit alerts the municipal official of the installation of the fire safety system. Release of the plans and the fire subcode official's initial inspection after installation assures that the system, which will now be relied on to alert owners and the public of the presence of fire, is in full operational order. Annual inspections ensure that the equipment continues to operate as expected, providing notice of a fire hazard.
Although it may be reasonable for Swift to have relied on JMG for proper installation of its fire safety system, Swift cannot be seen to have deputed its accountability for performing an owner's affirmative responsibilities to obtain a permit for and inspection of a fire safety system that it voluntarily installed. We conclude that the duty to comply with the Code provisions outlined is of such extraordinary importance to the public safety that it is nondelegable.
Jury verdicts should be set aside in favor of new trials only with reluctance and then, only in cases showing clear injustice. See Goss v. American Cyanamid, Co., 278 N.J.Super. 227, 239, 650 A.2d 1001 (App.Div.1994). The trial court instructed the jury to consider whether Swift was negligent when installing, maintaining, and inspecting its fire alarm system. Also the trial judge instructed that Swift's violation of the Code may be considered negligence. These instructions fell short of fully presenting the applicable law, see Navarro v. George Koch & Sons, Inc., 211 N.J.Super. 558, 580, 512 A.2d 507 (App.Div.1986); Kaplan v. Haines, 96 N.J.Super. 242, 251, 232 A.2d 840 (App.Div.1967), aff'd o.b. 51 N.J. 404, 241 A.2d 235 (1968), because the trial court, did not instruct the jury that Swift had a nondelegable duty under the Code to maintain safe premises. Once its fire safety system was installed, Swift was required to be sure that the system was inspected by the sub-code official, that it remained operational and was inspected each year, and, further, that Swift could *869 not be relieved of these responsibilities by relying on an independent contractor, such as JMG. A properly instructed jury could find that failure to obtain the necessary permits and initial inspection of the fire safety system by the municipal fire subcode official could be evidence of Swift's breach of its nondelegable duty to assure its system was properly operating.
Defendants maintain that because the jury found both Swift and JMG negligent, but determined that the negligence of neither was the proximate cause of plaintiffs' damages, any misstatement of the nature of Swift's duty was harmless error. Unfortunately, it is not clear, given the nature of the jury's second posed question, whether a full and accurate recitation of the law would have rendered a different result. The jury charge was erroneous, and we conclude that this error was "clearly capable of producing an unjust result." R. 2:10-2. Accordingly, we reverse the judgment and direct a new trial be held.
We briefly address the other issues presented in the remaining arguments on appeal. No misapplication of discretion occurred in the trial judge's decision to decline plaintiffs' request, after the jury had been charged, to take judicial notice that the Code defines "fire official" at N.J.A.C. 5:18-1.5. Earlier, during a N.J.R.E. 104(a) hearing, plaintiffs had objected to Swift's suggestion that the trial court take judicial notice of the Code, suggesting the prerequisites of N.J.R.E. 201 were not fulfilled. Plaintiffs may not now claim error in the exercise of discretion to decline to take judicial notice. See Fox v. Twp. of Parsippany-Troy Hills, 199 N.J.Super. 82, 89, 488 A.2d 557 (App.Div.) (holding the plaintiffs could not claim on appeal that a jury instruction, which they specifically had requested, constituted prejudicial error), certif. denied, 101 N.J. 287, 501 A.2d 949 (1985).
The use of the standard jury charge for proximate cause was not error; however, on retrial the trial court is free to modify the charge as necessary. We find no error, based on this record, in the determination to dismiss Sadora, Sr., a party defendant, or to allow the expert testimony. We note, however, that these issues may be specific to the concluded trial in respect of which we have set aside the judgment, and may not again arise on retrial.
In view of the foregoing, we set aside the jury's verdict, reverse the trial court's order, and remand for a new trial.
NOTES
[1] On February 4, 2005, the court entered summary judgment in favor of ESL.
[2] The regulations were recodified as N.J.A.C. 5:70, effective July 1, 1998, see 30 N.J.R. 2644(a) (July 20, 1998). All references to the Uniform Fire Code in this opinion will refer to the regulations in effect at the time of the fire, unless otherwise specified.
[3] At the time of the fire, this provision was included in the Code. No provision mirroring the requirements of N.J.A.C. 5:18-3.4 is found in the recodified Code, N.J.A.C. 5:70.