964 A.2d 304

ELIZABETH BABOGHLIAN, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF VARTKES O. BABOGHLIAN, VARTKES BABOGHLIAN SHELTER TRUST, VIGEN BABOGHLIAN, VARTKES K. BABOGHLIAN, ESTATE OF RAHILE BABOGHLIAN AND ARTISTIC FURNITURE & LIGHTING CO., INC. AND/OR VARTKES O. BABOGHLIAN AND ELIZABETH BABOGHLIAN T/A ARTISTIC FURNITURE & LIGHTING COMPANY, PLAINTIFFS–RESPONDENTS, v. SWIFT ELECTRICAL SUPPLY CO., A CORPORATION, A/K/A SWIFT ELECTRICAL SUPPLY CO., INC., SWIFT ELECTRIC SUPPLY CO., A CORPORATION, SWIFT ELECTRIC SUPPLY CO., AS SUCCESSOR-IN-INTEREST TO SWIFT ELECTRIC SUPPLY CO., AUGUST SODORA, IMPROPERLY PLEAD AS AUGUST SADORA, INDIVIDUALLY AND T/A SWIFT ELECTRICAL SUPPLY CO. AND/OR SWIFT ELECTRIC SUPPLY CO. AND AUGUST SODORA, JR., IMPROPERLY PLEAD AS AUGUST SADORA, JR., INDIVIDUALLY AND T/A SWIFT ELECTRICAL SUPPLY CO. AND/OR SWIFT ELECTRIC SUPPLY CO., DEFENDANTS–APPELLANTS, AND ABC CORPORATIONS 1–5 AND JOHN DOES 1–5, DEFENDANTS.

Argued October 20, 2008—Decided February 18, 2009.

510

*Janet L. Poletto,* argued the cause for appellants (*Hardin, Kundla, McKeon & Poletto,* attorneys; *Ms. Poletto* and *Patrick J. McCormick,* on the brief).

*Robert E. Rochford,* argued the cause for respondents.

Justice WALLACE, delivered the opinion of the Court.

In this appeal, we determine whether the owner of a building, who voluntarily installs a fire alarm system, owes a nondelegable duty to comply with certain provisions of the Uniform Fire Code (Code), *N.J.A.C.* 5:70–1.1 to –4.20. Plaintiffs sued defendants, their next-door neighbors, alleging that they were negligent in failing to apply for a permit to install their fire alarm system and in failing to properly maintain the system, causing the delayed warning of a fire that destroyed both defendants' and plaintiffs' properties. The jury found defendants negligent, but that their negligence was not a proximate cause of plaintiffs' damages. On appeal, the Appellate Division reversed and remanded for a new trial, holding that the jury should have been charged that defendants owed a nondelegable duty to plaintiffs. *Baboghlian v. Swift Elec. Supply,* 393 *N.J.Super.* 187, 922 *A.*2d 860 (2007). We granted defendants' petition for certification. 194 *N.J.* 445, 945 *A.*2d 1289 (2008). We now reverse.

I.

Plaintiffs, Elizabeth and Vartkes [1] Baboghlian, owned the building located at 4401 Bergenline Avenue in Union City, where they conducted the business of Artistic Furniture and Lighting Company (Artistic). Plaintiffs also resided on the property. Although plaintiffs kept fire extinguishers and smoke detectors on the property, they did not have a fire alarm system.

---

[1] Vartkes died shortly after the fire, and Elizabeth was appointed executrix of his estate.

Defendants August Sodora and August Sodora, Jr. owned and operated defendant Swift Electrical Supply Co. (collectively "defendants"), which was located in a building they owned adjacent to plaintiffs' building. In 1987, defendants renovated their building and hired JMG Electrical Contractors (JMG) to install a fire alarm system. The system was manufactured by Electro Signal Labs (Electro Signal) and included smoke and heat detectors and a fire alarm panel with a telephone line connected to a central station. JMG installed the system, and thereafter serviced it upon request. The last recorded service by JMG occurred on March 19, 1993.

On August 22, 1995, a fire started in defendants' building and spread to plaintiffs' building. Both structures were badly damaged and had to be demolished. Plaintiffs filed suit against defendants on August 20, 2001, alleging that defendants negligently maintained their premises and failed to comply with the requisite fire safety measures. Defendants in turn filed third-party actions against JMG and Electro Signal. In January 2005, JMG and Electro Signal filed motions for summary judgment. The trial court granted Electro Signal's motion, but denied JMG's motion. The case proceeded to trial against defendants and JMG.

Plaintiffs' expert, James Valentine, testified that the alarm system failed on the evening of the fire. He explained that a smoldering fire, such as the one that originated in defendants' building, could have been contained without spreading to plaintiffs' property because

a properly installed fire alarm system ... detect[s] fires in a small growth stage.... [S]moke detectors are designed to detect different types of fires but smoldering usually and they're made to allow the occupants to escape without harm and to give the fire department a chance to reach the fire and extinguish it before a growth like this occurs.

Valentine related that the alarm system's failure could have resulted from the improper location and/or coverage of the fire detectors, and/or a malfunctioning system component. He could not conclude, however, to a reasonable degree of scientific probability, which of those possibilities likely caused the failure of the system. He noted that JMG, as the installer of the system, was

responsible for ensuring that the detectors were placed in proper locations and that they provided sufficient coverage. Further, Valentine believed that it was reasonable for defendants

> to rely on [their] retained licensed contractor to properly design and lay out an alarm system in accordance with the codes and standards[;] ... to rely on the contractor to apprise them as to how a system should be maintained[; and] ... to rely on [the] contractor to apprise them of any code requirements that relate to the system after it [was] installed.

Valentine explained that once defendants elected to install a fire alarm system, they should have requested and completed a permit application; obtained the permit; installed the system; had a sub-code official test the system; and then subjected the system to annual inspections. On cross-examination, Valentine conceded that neither the Code nor any municipal or state ordinance required the installation of a fire alarm system in defendants' building when it was first constructed or at any time prior to the fire.

Defendants' expert, Jeffrey Zwirn, testified that it was reasonable for defendants to rely on JMG to advise them of any Code standards or other recommended requirements relative to the installation of the fire alarm system. He explained that the Code did not require defendants to install a fire alarm system. Zwirn also found that the fire alarm system was appropriately designed with heat detectors in the loft/attic area where the fire originated. He noted that a properly working alarm system would not have activated at the incipient stage of the fire due to the location of the fire's origin and other environmental factors. Finally, he asserted that defendants' failure to obtain permits or have initial and annual inspections did not cause the fire or contribute to its spread to plaintiffs' building.

Jorge Gonzalez, president of JMG, testified that he is an electrical contractor with an electrical inspector's license that enables him to perform inspections for municipalities. He stated that he applied for and received the proper permits for the installation of the fire alarm system in defendants' building, but he could not produce a copy because he only keeps records for five to

seven years. The evidence showed that JMG performed the following services for defendants from 1990 through 1993: replaced a damaged smoke detector; reinstalled a ceiling speaker on the fire alarm system; inspected and cleaned smoke detectors; and conducted general servicing of the system.

Prior to the trial court's charge to the jury, plaintiffs requested that the court charge the jury that defendants had a nondelegable duty to comply with the Code. The trial court denied that request and charged the jury according to general principles of negligence and proximate cause. Specifically, the court instructed the jury that:

> The plaintiffs contend that the [defendants] violated the Uniform Fire Code, in particular that [they] did not obtain a permit from the local construction official before installing a fire alarm system. And in addition, [defendants] did not arrange for either the initial inspection upon the installation of the system or the annual inspections every year thereafter.
>
> If you find that the defendant[s] ... did not comply with the Uniform Fire Code, you may consider that as evidence of negligence. As the trier of the facts, you will have to determine the weight to be given to that evidence as with all the evidence in this case and it is for you ultimately to determine whether the Uniform Fire Code violations constitute negligence as I am defining it for you.
>
> You've heard me make reference to proximate cause and I will now further define that for you. If you find that defendant[s] ... [were] negligent, you must find that [their] negligence was a proximate cause of the accident before you can find that [defendants were] responsible for the plaintiffs' claimed damages.
>
> ....
>
> ... The plaintiffs have brought this action against the defendant[s]. [Defendants] ... den[y] any negligence on [their] part but [have] brought a third party complaint against JMG in which [they] contend[ ] that should you find that [defendants are] liable to the plaintiff[s] for damages, [then] JMG should likewise be liable to [defendants].
>
> ....
>
> The first question is have the plaintiffs ... proved by a preponderance of the evidence that the defendant[s] ... [were] negligent.... If your answer to question number one is no, stop your deliberations now, enter zero percent for [defendants] in question number five and advise the court that you have reached a verdict.

During deliberations, the jury asked the court several questions. It first asked, "[d]oes an inspection conducted by JMG constitute an 'official' inspection? Or does an 'official' inspection need to be conducted by a Union City official and if so, does this apply to the initial inspection also?" The jury also asked, "[d]oes Swift have to

be negligent in order for JMG to be negligent? I.e., can JMG be held negligent without finding Swift negligent?" The court answered the first question by stating that "there was no testimony ... directly responsive to the question." The court answered the second question by stating, "in order to hold JMG negligent, Swift Electric must be found to be negligent, at least in part so there has to be a finding of negligence as to Swift, at least partially before you get to JMG."

The jury found that defendants were negligent, but their negligence was not a proximate cause of plaintiffs' damages. Similarly, although based on the trial court's instructions the jury was not required to render a formal verdict as to JMG after finding that defendants were not liable, the jury indicated on its verdict form that JMG was negligent, but that its negligence was not a proximate cause of plaintiffs' damages. Plaintiffs moved for judgment notwithstanding the verdict, or, in the alternative, a new trial. The trial court denied both motions. Plaintiffs appealed, arguing in part that defendants owed a nondelegable duty and that the court failed to properly instruct the jury on that issue.

The Appellate Division reversed and remanded for a new trial. *Baboghlian, supra,* 393 *N.J.Super.* at 197, 922 *A.*2d 860. The panel recognized that generally an owner who engages an independent contractor is not liable for the contractor's negligence, but explained that the " 'duty owed to the public may be too important to allow its delegation to an independent contractor, and therefore the [L]egislature or the court may impose a nondelegable duty on the principal.' " *Id.* at 198, 922 *A.*2d 860 (quoting *Great Northern Ins. Co. v. Leontarakis,* 387 *N.J.Super.* 583, 591, 904 *A.*2d 846 (App.Div.2006)). The panel concluded that "the specific duties imposed on a property owner under the Code are nondelegable because they direct action in an area designed to promote and protect public safety." *Id.* at 199, 922 *A.*2d 860. Thus, the panel determined that the trial court should have instructed the jury on defendants' nondelegable duty under the Code to maintain safe premises, and "[a] properly instructed jury could find that failure to obtain the necessary permits and initial inspection of the fire

safety system by the municipal fire sub-code official could be evidence of Swift's breach of its nondelegable duty to assure its system was properly operating." *Id.* at 200–01, 922 *A.*2d 860. We granted defendants' petition for certification. 194 *N.J.* 445, 945 *A.*2d 1289 (2008).

## II.

Defendants argue that the imposition of a nondelegable duty on a volunteer is unwarranted and contrary to this Court's holding in *Dowler v. Boczkowski,* 148 *N.J.* 512, 691 *A.*2d 314 (1997). In support of their position, defendants urge that the imposition of a nondelegable duty on volunteer landowners would serve to discourage future landowners from voluntarily undertaking useful improvements to their property. Defendants also assert that public policy does not require the imposition of a nondelegable duty to obtain a permit or test a fire alarm system. Additionally, defendants argue that, regardless of whether they had a nondelegable duty, it was error to overturn the jury's finding that their negligence was not a proximate cause of plaintiffs' damages.

In contrast, plaintiffs urge that the Appellate Division correctly held that defendants owed them a nondelegable duty to comply with the Code. Plaintiffs claim that, although defendants were under no obligation to install the fire alarm system, their decision to do so carried with it obligations to the general public, including plaintiffs. Further, they contend that only property owners can discharge duties under the Code, and therefore any violations committed by JMG should be attributed to defendants. Plaintiffs also argue that it was error for the trial court to instruct the jury that it could not consider JMG's conduct in determining defendants' negligence.

## III.

### A.

In 1983, the Legislature passed the "Uniform Fire Safety Act" (Act) to ensure that "[a]ll areas of this State are protected by a

uniform, minimum, fire safety code which will protect the lives and property of the State's citizens." *N.J.S.A.* 52:27D–195. The Act required the Commissioner to promulgate

> regulations to insure the maintenance and operation of buildings and equipment in such a manner as will provide a reasonable degree of safety from fire and explosion[, including] a uniform fire safety code primarily based on the standards established by the Life Safety Code (National Fire Protection Association 101) and any other fire codes of the National Fire Protection Association and the Building Officials and Code Administrators International (BOCA) Basic Fire Prevention Code, both of which may be adopted by reference.... The code promulgated pursuant to this section shall include the requirements for fire detection and suppression systems....
>
> [*N.J.S.A.* 52:27D–198(a)–(b).]

The Commissioner then promulgated the Code

> to prescribe regulations consistent with nationally recognized good practice for the safeguarding to a reasonable degree of life and property from the hazards of fire and explosion arising from the storage, handling and use of hazardous substances, materials and devices, and from conditions hazardous to life or property in the use or occupancy of buildings or premises.
>
> [*N.J.A.C.* 5:70–1.3(a).]

The Code defines an "owner" as "a person who owns, purports to own, manages, rents, leases or exercises control over a building, structure, premises, or use, or a portion thereof." *N.J.A.C.* 5:70–1.5. Such an owner "shall be responsible for the safe and proper maintenance of the premises at all times." *N.J.A.C.* 5:70–2.2(a). A violation of the Code occurs when "an officer, agent or employee under his control and with his knowledge has violated or caused to have violated any of the provisions of this Code." *N.J.A.C.* 5:70–2.2(d).

At the time of the fire, the Code provided that "[b]efore any fire alarm, detection or fire suppression system is installed ... a construction permit shall be secured." *N.J.A.C.* 5:18–3.4(a)(2) (repealed 1998). Also, the Code required annual testing of automatic and manual fire alarm systems and their components. *N.J.A.C.* 5:18–3.4(a)(6) (repealed 1998).[2]

---

[2] In 1998, the Code was recodified and incorporated into Chapter 70 of Title 5. *See* 30 *N.J.R.* 2644(a) (July 20, 1998). The current version does not contain provisions similar to *N.J.A.C.* 5:18–3.4(a)(2) or *N.J.A.C.* 5:18–3.4(a)(6).

It is not disputed that at the time of the fire, the Code did not require defendants to have a fire alarm system in their building. However, if an owner or operator of a building installed a fire alarm system, the owner or operator was required to obtain a permit and thereafter perform annual testing of the system.

### B.

Defendants argue that they delegated the responsibility to install the fire alarm system to a licensed electrical contractor, and this Court should not impose a nondelegable duty upon them to obtain a permit and inspect the system when they had no obligation to install the system in the first place. In the circumstances presented, we agree. As a general rule, and absent certain exceptions, one who engages an independent contractor is not liable for the negligence of that contractor in the performance of the contract. *Basil v. Wolf,* 193 *N.J.* 38, 62, 935 *A.*2d 1154 (2007); *Majestic Realty Assocs., Inc. v. Toti Contracting Co.,* 30 *N.J.* 425, 430–32, 153 *A.*2d 321 (1959). In *Majestic, supra,* this Court identified the exceptions to include: (1) where the landowner retains control of the manner and means of doing the work under the contract; (2) where the landowner engages an incompetent contractor; and (3) where the activity constitutes a nuisance per se. 30 *N.J.* at 431, 153 *A.*2d 321. The Appellate Division recognized, and we agree, that the exceptions identified in *Majestic* do not apply to the present case. *Baboghlian, supra,* 393 *N.J.Super.* at 197, 922 *A.*2d 860.

Nevertheless, the Appellate Division looked to its earlier decision in *Great Northern, supra,* 387 *N.J.Super.* 583, 904 *A.*2d 846, to consider an additional exception for cases in which the contractor's activity presents a significant risk of grave harm. *Baboghlian, supra,* 393 *N.J.Super.* at 198, 922 *A.*2d 860. In *Great Northern,* the plaintiff sued the defendant for damage to his property caused by excavation work performed on the defendant's property by an independent contractor. 387 *N.J.Super.* at 587, 904 *A.*2d 846. The plaintiff alleged that the work performed by the con-

tractor caused the soil supporting the plaintiff's brick privacy wall to collapse, causing extensive damage to the wall, his home, and other parts of his property. *Id.* at 589, 904 *A.*2d 846. At the conclusion of the plaintiff's case, the trial court dismissed the action against the defendant. *Id.* at 589–90, 904 *A.*2d 846. The plaintiff settled with the remaining parties and appealed. *Id.* at 590, 904 *A.*2d 846. The Appellate Division reversed and concluded that, in light of *N.J.S.A.* 46:10–1, which required the party performing excavation work to "preserve, at his own expense, such party or other wall from injury," *id.* at 592, 904 *A.*2d 846, "a reasonable jury could find that [the defendant] breached the nondelegable duty to provide lateral support to [the plaintiff's] property imposed by *N.J.S.A.* 46:10–1." *Id.* at 594, 904 *A.*2d 846. The Appellate Division held that a property owner owed a nondelegable duty to his neighbor for lateral support because the Legislature "recogni[zed] . . . the significant risk of grave harm involved in removing lateral support from adjoining land." *Id.* at 592, 904 *A.*2d 846.

Our courts have imposed nondelegable duties in other instances in which the potential for grave harm was involved. *See, e.g., Majestic, supra,* 30 *N.J.* at 439, 153 *A.*2d 321 (ruling that defendant property owner, who hired independent contractor to raze buildings on its property, owed nondelegable duty to owner of adjacent property because "[t]he social value of the duty . . . is so significant that the law cannot allow it to be transferred to another"); *Marek v. Prof'l Health Servs., Inc.,* 179 *N.J.Super.* 433, 441, 432 *A.*2d 538 (App.Div.) ("[T]he duty assumed by [defendant health care provider] to plaintiff, i.e., to carefully and diligently diagnose within reasonable professional standards any condition or disease positively appearing on his chest x-ray, was a nondelegable duty."), *appeal dismissed,* 93 *N.J.* 232, 460 *A.*2d 645 (1981); *Araujo v. N.J. Natural Gas Co.,* 62 *N.J.Super.* 88, 102, 162 *A.*2d 299 (App.Div.) (holding gas company's duty to install pipes was nondelegable because "[t]he highly dangerous character of gas and its tendency to escape required the exercise of a proportionate amount of care, and . . . involved the most grave risk of harm"

(citation omitted)), *certif. denied,* 33 *N.J.* 328, 164 *A.*2d 380 (1960). *But see Marion v. Pub. Serv. Elec. & Gas Co.,* 72 *N.J.Super.* 146, 159, 178 *A.*2d 57 (App.Div.1962) ("The unloading of massive equipment from railroad cars is not 'inherently dangerous' nor a 'nuisance per se.' A danger is not created thereby regardless of reasonable care on the part of the contractor responsible for such an undertaking.").

The Appellate Division accepted plaintiffs' argument that "the specific duties imposed on a property owner under the Code are nondelegable because they direct action in an area designed to promote and protect public safety." *Baboghlian, supra,* 393 *N.J.Super.* at 199, 922 *A.*2d 860. Although we agree that the Code is designed to "protect the lives and property of the State's citizens," *N.J.S.A.* 52:27D-195, we do not agree that this case presents the necessary conditions to impose a nondelegable duty on property owners in the installation of a fire alarm system.

█ Unlike in *Great Northern, supra,* in which the Appellate Division relied on a statutory requirement to find a nondelegable duty, neither a statute nor the Code required that defendants install a fire alarm system in their building. Indeed, when later recodified, the Code did not include the obligations that plaintiffs allege defendants failed to fulfill, i.e. the obtaining of a permit and the inspection of the unit. *See N.J.A.C.* 5:70-1.1 et seq. Under the circumstances presented, in the absence of a statutory requirement to install a fire alarm system, we find that the former Code requirements to obtain a permit and perform system inspections do not justify the imposition of a nondelegable duty.

Defendants also argue that based on the holding of *Dowler v. Boczkowski,* 148 *N.J.* 512, 524, 691 *A.*2d 314 (1997), they did not owe any duty to plaintiffs with respect to the fire alarm system voluntarily installed in its premises. In *Dowler,* the plaintiffs rented a home from the defendants, who had voluntarily installed smoke detectors. *Id.* at 514-15, 691 *A.*2d 314. A fire broke out in the home after a partially extinguished cigarette was thrown into the trash, and the alarm did not activate. *Id.* at 515, 691 *A.*2d 314.

One of the plaintiffs suffered significant burns, and the plaintiffs filed suit, alleging that the defendant "negligently failed to provide a fire protection system to warn them of fire." *Ibid.* This Court found that the Uniform Fire Safety Act applied, but that at the time of the fire "that statute did not require smoke detectors in single-family rentals." *Id.* at 523, 691 *A.*2d 314. We concluded that "[b]ecause no law required a smoke detector in plaintiffs' home, the placement of a smoke detector away from the bedroom area was not negligent as a matter of law." *Id.* at 524, 691 *A.*2d 314.

As noted previously, the Code did not require defendants to install a fire alarm system in their building. However, unlike the defendants in *Dowler,* defendants here were subject to certain Code requirements once they elected to install the fire alarm system, including the obtaining of a permit and subjecting the system to annual inspections. Thus, *Dowler* does not control the outcome here.

Lastly, plaintiffs assert that the trial court erred in responding to a jury question by stating that in order to find JMG negligent, it must first find defendants negligent. The jury subsequently found that both JMG and defendants were negligent, but that their negligence was not a proximate cause of plaintiffs' damages. Therefore, even if the trial court was mistaken in its response to the jury's question, the jury's finding of no proximate cause rendered any error harmless.

### IV.

The judgment of the Appellate Division is reversed, and we reinstate the verdict of the jury.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.